Present: Hassell, C.J., Keenan, Koontz, Lemons, Agee, and
Goodwyn, JJ., and Lacy, S.J.

MICHAEL F. JENNINGS

v. Record No. 070498          OPINION BY SENIOR JUSTICE
                              ELIZABETH B. LACY
                              April 18, 2008
KAY JENNINGS FAMILY
LIMITED PARTNERSHIP, ET AL.

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Michael P. McWeeny, Judge

     In this appeal we consider whether the trial court erred

in dismissing Michael Jennings' derivative suit because

Michael, a limited partner in the Kay Jennings Family Limited

Partnership, did not "fairly and adequately represent the

interests" of the limited partners and the partnership and

therefore lacked standing to bring a derivative suit pursuant

to Code § 50-73.62.

                      FACTS and PROCEEDINGS

     Louis Allen Jennings operated a car dealership,

Springfield Toyota, Inc. (the dealership), in Springfield,

Virginia on land which he owned.  In 1964, Louis Jennings and

his wife, Minnie K. Jennings (Kay) executed a 99-year lease

with Avis and Mary R. Boothe (the Boothe lease) for an

adjacent parcel of land for use in the operation of the

dealership.  Following her husband's death, Kay formed the

Jennings Family Limited Partnership to own and lease property.

Kay was the sole general partner.  She and her five children,

Michael, Louis, Katherine, Mary and Beverly, were limited partners.  In August of 1985, the Jennings Family Limited Partnership and the dealership executed an Agreement of Lease under which the dealership subleased the Boothe land from the partnership.

In 1994 the dealership was reorganized.  The dealership redeemed Kay's stock and that of all the siblings except Michael, leaving Michael as the sole stockholder of the dealership.[1]  In that same year, the Jennings Family Limited Partnership was renamed the Kay Jennings Family Limited Partnership (the Partnership) and Kay withdrew as general partner.  Louis, Katherine, Mary and Beverly were substituted as general partners of the Partnership and all five siblings retained their interests as limited partners.  The reorganization of the Partnership was contingent on the execution of a new lease between the Partnership and the dealership for the land on which the dealership operated.  The new lease, executed March 29, 1994, provided that the dealership pay the Partnership $50,000 a month for 15 years with options to extend the lease for additional five-year periods.

---

[1] It appears in the record that at some point after Michael took control of the dealership, the entity operating the dealership was changed from Springfield Toyota, Inc. to Jennings Motor Co., LLC.

2

In 2004, Michael and representatives of Toyota met with the general partners to discuss an expansion of the dealership. The expansion involved extensive improvements that were projected to increase the dealership's sales. To finance the improvements, Michael proposed that the Partnership subordinate the lease to the construction loan. When the general partners declined to do so, Michael offered to buy his siblings' interests in the Partnership for $2,000,000 each, so that "he could control the partnership and control the land." His sister Mary sold her Partnership interest to Michael, but the remaining three siblings refused Michael's offer. Consequently, Louis, Katherine, and Beverly each retained a 5% general partnership interest and a 15% limited partnership interest, and Michael had a 40% limited partnership interest.

In July 2005, Katherine and Beverly, as general partners of the Partnership, wrote a "To Whom It May Concern" letter stating that "no one general partner could unilaterally make decisions for the [P]artnership or . . . bind [it] to specific courses of action." The letter was written in response to Michael's complaints about Louis' actions including an incident in 2003 involving Louis' suggestions to Toyota Motor Sales USA, Inc., an importer of Toyota motor vehicles, and Central Atlantic Toyota Distributors, Inc., a distributor of

3

Toyota motor vehicles and Springfield Toyota's franchisor, that the lease between the dealership and the Partnership was not valid.

On August 18, 2005, Michael filed a derivative suit pursuant to Code § 50-73.62, against the Partnership and Louis Jennings.[2]  In the suit, Michael recited a number of actions taken by Louis which Michael claimed breached Louis' fiduciary duties to the Partnership, endangered the Partnership, and possibly left the Partnership vulnerable to Louis' creditors. Michael also claimed that Louis intentionally interfered with Michael's business relationship with Toyota Motor Sales USA, Inc. and Central Atlantic Toyota Distributors, Inc., when he contacted the Toyota companies and suggested, among other things, that the lease between the dealership and the Partnership was invalid.  Michael asked the trial court to expel Louis from the partnership and substitute Michael as a general partner in Louis' stead.  Although Michael provided a courtesy copy of the suit papers to Katherine and Beverly, Louis and the Partnership were not served for approximately one year.

During the pendancy of the derivative suit, DAMN, LLC, a business owned and operated by Michael and his wife, Diane,

---

[2] Jennings Motor Co., LLC was also listed as a plaintiff in this suit.

4

purchased the Boothe's property and notified the Partnership that the rent would increase from $2,500 a month to $10,500 a month based on their interpretation of the lease rent calculation index. The Partnership challenged the rent increase, and the dispute was arbitrated as provided in the lease.

When Michael's derivative action was served on the Partnership in 2006, the Partnership filed a demurrer and plea in bar. The trial court sustained the demurrer with leave to amend, ruling that Michael's individual claims against Louis could not be joined with the derivative suit and that the trial court had no authority to replace Louis with Michael as a general partner. Michael filed an amended bill of complaint, limiting his claims to those held by the partnership in general and requesting, among other things, that the trial court convert Louis' general partnership interest into a limited partnership interest.

The Partnership again filed a plea in bar and motion to dismiss. In the plea in bar, the Partnership asserted that Michael lacked standing to maintain a derivative suit, because he did not "fairly and adequately represent the interests" of the limited partners and the Partnership as required by Code § 50-73.62. At the conclusion of an ore tenus hearing held on the plea in bar, the trial court found that Michael did not

5

fairly and adequately represent the interests of the Partnership or the limited partners because he (1) "has economic interests that are directly adverse to those of the partnership" (2) "maintained as a manager of the DAMN, LLC, an arbitration adverse interest to the partnership as well," and (3) "is pursuing remedies that are not supported by the other parties." The trial court dismissed the derivative proceeding for lack of standing, and also ordered recovery of attorneys' fees against the plaintiff. Michael timely appealed to this Court asserting that he did have standing to pursue the derivative action because as a matter of law he had no interests that were directly economically antagonistic to the interests of the Partnership.

## DISCUSSION

On appellate review of a ruling on a plea in bar based on an ore tenus hearing, the trial court's factual findings will not be set aside unless plainly wrong or without evidence to support them. Cooper Indus., Inc. v. Melendez, 260 Va. 578, 595, 537 S.E.2d 580, 590 (2000). Whether the facts found by the trial court in this case rendered Michael unable to fairly and adequately represent the interests of the other limited partners and the Partnership is a mixed question of fact and law which we review de novo. See Purce v. Patterson, 275 Va.

6

190, 194, 654 S.E.2d 885, 887 (2008), <u>Grandison v. Commonwealth</u>, 274 Va. 316, 320, 645 S.E.2d 298, 300 (2007).

Code § 50-73.62 allows a limited partner to bring an action "in the right of a limited partnership . . . to the same extent that a stockholder may bring an action for a derivative suit under the Stock Corporation Act, Chapter 9 (§ 13.1-601 et seq.) of Title 13.1."  A derivative action may be pursued if the general partners with authority to bring an action asserting the rights of the partnership have refused to do so or if an effort to cause the partners to bring such an action "is not likely to succeed."  Code § 50-73.62.  A limited partner cannot maintain a derivative action, however, if "it appears that the plaintiff does not fairly and adequately represent the interests of the limited partners and the partnership in enforcing the right of the partnership."  <u>Id.</u>  We have not previously addressed the factors a court should consider when determining whether the plaintiff "fairly and adequately" represents the limited partners and partnership in a derivative action, nor have we construed a similar standing requirement for shareholder derivative suits.  <u>See</u> Code § 13.1-672.1 (shareholder in derivative action must fairly and adequately represent corporation's interests in enforcing rights of corporation).

Both parties suggest that we consider the factors set out in Davis v. Comed, Inc., 619 F.2d 588, 593-94 (6th Cir. 1980). That case involved the application of Rule 23.1 of the Federal Rules of Civil Procedure, which contains a requirement of fair and adequate representation that is substantially similar to the Virginia requirement.[3]

In Davis, the United States Court of Appeals for the Sixth Circuit reviewed other cases that addressed the standing requirement of fair and adequate representation in derivative suits. The Court stated that, in making this determination,

> a court should examine any indications that there are extrinsic factors which render it likely that the representative may disregard the interests of the class members. Indeed, while a plaintiff is not necessarily disabled to bring suit simply because some of his interests extend beyond that of the class, the court may take into account outside entanglements that render it likely that the representatives may disregard the interests of other class members.

Id. at 593 (citations and internal quotation marks omitted). The court then identified the following factors as relevant to determining whether the plaintiff meets the representational requirements: (1) economic antagonisms between the representative and members of the class; (2) the remedy sought by the plaintiff in the derivative action; (3) indications

---

[3] The federal rule refers to shareholders or members who are "similarly situated." The omission of this phrase in the Virginia statute is not at issue in this case.

8

that the named plaintiff is not the driving force behind the litigation; (4) plaintiff's unfamiliarity with the litigation; (5) other litigation pending between the plaintiff and defendants; (6) the relative magnitude of plaintiff's personal interests as compared to his interests in the derivative action itself; (7) plaintiff's vindictiveness toward the defendants; and (8) the degree of support plaintiff is receiving from the shareholders he purports to represent.  Id. at 593-94.

These factors have been utilized in many jurisdictions, see Larson v. Dumke, 900 F.2d 1363, 1367 (9th Cir. 1990), Vanderbilt v. Geo-Energy, Ltd., 725 F.2d 204, 207 (3d Cir. 1983), Elgin v. Alfa Corp., 598 So.2d 807, 818-19 (Ala. 1992), Fink v. Golenbock, 680 A.2d 1243, 1256 (Conn. 1996), Woods v. Wells Fargo Bank, 90 P.3d 724, 735-36 (Wyo. 2004), and the trial court's factual findings here indicate that it considered the Davis factors in reaching its holding.[4]  We agree that these factors are relevant in determining whether a limited partner can adequately and fairly represent the interests of the partnership and the other limited partners in a derivative action.  These factors, however, are not exclusive and must be considered in the totality of the

---

[4] The trial court's three factual findings corresponded to Davis factors 1, 5 and 8 set out above.

9

circumstances found in each case.  As the court in Davis commented,

> it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of [fair and adequate representation] (although often a strong showing of one way in which the plaintiff's interests are actually inimical to those he is supposed to represent fairly and adequately, will suffice in reaching such a conclusion).

Id. at 593.

While suggesting that the Davis factors are relevant, Michael argues that the trial court misapplied them.  First, citing G.A. Enterprises, Inc. v. Leisure Living Communities, Inc., 517 F.2d 24 (1st Cir. 1975), Michael contends that economic antagonism must exist between the plaintiff's economic interest and the claims raised in the derivative action.  Here, Michael argues, the claims raised involve Louis' actions that Michael alleges have impacted or can adversely impact the Partnership's income stream.  According to Michael, he has no economic interest antagonistic to the claims made in the derivative action.  We disagree with Michael's premise and his reading of G.A. Enterprises.

Although the United States Court of Appeals for the First Circuit Court in G.A. Enterprises stated that "it is sometimes said" that the adverse economic interest must be antagonistic to the subject matter of the derivative action, the court went

10

on to explain that "these principles have not been read to prevent a court from taking account of outside entanglements making it likely that the interests of the other stockholders will be disregarded in the management of the suit," citing other state and federal cases. Id. at 27. The court observed that such "outside influences are not hypothetical but constitute a present threat to the conduct and indeed to 'the subject matter' of the suit." Id.

We agree with the First Circuit Court of Appeals. Economic interests that may not be directly antagonistic to the claims made in the derivative suit may, nevertheless, have an impact on the derivative plaintiff's ability to fairly and adequately maintain the litigation in the best interests of the partnership and the other limited partners. Accordingly, in applying the Davis factors, it is appropriate to consider economic interests that may influence the derivative plaintiff's judgment in the management of the litigation in a manner antagonistic to the interests of the partnership or other partners.

The trial court did not identify the specific economic interests it considered to be antagonistic to the Partnership. However, the record contains a number of circumstances suggesting economic antagonism between Michael and the Partnership. For example, as a principal in DAMN, LLC,

11

Michael had an adverse economic interest in securing as much rental income as possible from the Partnership under the Boothe lease. Additionally, as president of the dealership, Michael had an economic interest in maintaining the lease with the Partnership and paying as little rent as possible to the Partnership under that lease. Another example of economic antagonism is Michael's desire to expand the dealership by subordinating the Partnership's lease to obtain a construction loan and the Partnership's conflicting desire to avoid such a monetary risk. Furthermore, Michael's expressed desire to "control the partnership and the land" can be viewed as antagonistic to the interests of the Partnership and the other partners. Accordingly, we conclude that the trial court's finding that Michael had economic interests antagonistic to the interests of the Partnership is supported by sufficient evidence and we will not reverse that finding.

The trial court's second finding, that Michael maintained an arbitration proceeding antagonistic to the Partnership, is also supported by the record. Upon purchasing the Boothe property and becoming the Partnership's lessor in March of 2006, DAMN, LLC immediately informed the Partnership that the index by which the rent was to be calculated was no longer in existence and that based on new indices, the monthly rent should be set at $10,500 commencing in May 2006. DAMN, LLC

further informed the Partnership that any dispute regarding the rent would have to be submitted to arbitration and if the Partnership pursued such a course of action, DAMN, LLC would seek allegedly past-due rent of over $3,000,000 and assert that the current rent should be $12,740 per month.

Michael argues that his involvement in the arbitration proceeding is an inadequate basis to deny him standing because "the importance of the arbitration paled in comparison with the necessity of the relief from the tortious conduct of Louis Jennings."[5]  Furthermore, Michael claims that the arbitration "could have only modestly affected the net income" of the Partnership by "possibly raising the rent."  We disagree with Michael's characterization of the effect of the arbitration proceeding.  The impact of the increase in rent DAMN, LLC sought amounted to additional rental payments totaling $96,000 on an annual basis, more than a "modest" impact on the Partnership's net income.  Furthermore, DAMN, LLC's threat to seek more than $3,000,000 in unpaid back rent from the Partnership if arbitration was pursued cannot be considered anything other than an act adverse to the Partnership. Accordingly, we conclude that the trial court's factual

---

[5] Michael also argued the arbitration proceeding was irrelevant to the issues in his derivative suit; however, as stated above, economic antagonism is not limited to claims raised in the derivative suit.

finding that Michael maintained an arbitration proceeding antagonistic to the Partnership was supported by the record.

The final factual finding by the trial court that the other partners did not support the derivative suit is also supported by the record and is not disputed by Michael. Michael asserts, however, that the lack of support by the other partners in pursuing the derivative action should not be a basis for concluding he could not fairly and adequately represent the interests of the partners and the Partnership. Michael contends that the lack of support from other partners is the "very essence of a derivative claim." Michael argues that the statutory predicate for bringing the derivative suit – that the general partners have refused to bring it or would not bring it if asked – means that, in situations like the instant case where there are only a few partners in the partnership, the lack of support from the other partners "is not a preclusion to the derivative claim, but a requirement."

We agree with Michael that the number of limited partners involved in the partnership may be relevant when considering the level of support a plaintiff receives from other partners and its impact on the ability to provide fair and adequate representation. But Michael's position elevates the number of partners available to file a derivative action above the other Davis factors and precludes the court from considering the

14

circumstances which influenced the actions of the other partners in supporting or not supporting the derivative action.  As we mentioned above, the <u>Davis</u> factors are not exclusive factors and, in making the determination whether a plaintiff in a derivative action can fairly and adequately represent the interests of the other partners and the partnership, the court should look at all the circumstances. The fact that there are a limited number of potential partners to bring a derivative suit, while relevant, does not overshadow all other factors.

## CONCLUSION

In summary, the factual findings of the trial court are supported by the record and those findings are relevant factors in determining whether Michael could adequately and fairly represent the interests of the Partnership and partners in this derivative suit.  Based on these factual findings we find no error in the trial court's judgment.  Michael's economic interests as both landlord and lessee of the Partnership created a direct conflict, particularly in light of the fact that Michael's income from the Partnership was substantially less than the income from his dealership. Michael's attempt to obtain higher rent from the Partnership through DAMN, LLC's purchase of the Boothe property and lease was in direct conflict with the interests of the Partnership.

15

And throughout the record Michael made it clear that his actions were inspired by his desire to "control" the partnership.  We conclude that these circumstances preclude Michael's ability to maintain this derivative action in the best interests of the Partnership and other partners.  Accordingly, we will affirm the judgment of the trial court.

Code § 50-73.65 provides that a defendant in a derivative action may recover reasonable expenses including attorney's fees "if the plaintiff did not fairly and adequately represent the interests of the limited partners and the partnership in enforcing the right of the partnership."  In their brief before this Court, Louis and the Partnership have asked that the case be remanded to the trial court for an award of attorneys' fees incurred in this appeal.  Accordingly, this case will be remanded to the trial court for that purpose only.

<u>Affirmed and remanded</u>.