COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Fulton, Causey and Raphael
Argued at Lexington, Virginia

ROBERT A. LINKENAUGER

                                               MEMORANDUM OPINION[*] BY
v.        Record No. 1225-23-3            JUDGE DORIS HENDERSON CAUSEY
                                                     AUGUST 20, 2024

MICAH S. FRAIM, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

C. Quinn Adams (Charles M. Sims; O'Hagan Meyer, PLLC, on
briefs), for appellant.

Devon J. Munro (Munro Byrd, P.C., on brief), for appellee.

Robert Linkenauger appeals the circuit court's order granting Micah Fraim and Steven

Walker's plea in bar relating to a derivative action filed by Linkenauger on behalf of Roanoke

Business Hub, LLC. The circuit court found, on alternative grounds, that Linkenauger did not

have derivative standing based on the eight factors detailed in *Jennings v. Kay Jennings Fam.*

*Ltd. P'ship*, 275 Va. 594, 601-02 (2008) (citing *Davis v. Comed, Inc.*, 619 F.2d 588, 593-94 (6th

Cir. 1980)). The circuit court also found that Linkenauger had not sent the other members a

written "demand letter" as required by Code § 13.1-1042 before suing. We conclude that the

circuit court did not err in finding that Linkenauger failed to send a written demand letter as

required by Code § 13.1-1042. Thus, we affirm the circuit court's judgment.[1]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, need not address the other grounds." *Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 127 n.2 (2013).

BACKGROUND

In 2016, Robert A. Linkenauger, Micah S. Fraim, and Steven Walker formed Roanoke Business Hub, LLC (RBH), to manage, buy, sell, rent, and develop real estate. Under RBH's operating agreement, each member had a one-third interest in the business, with management decisions generally requiring an "affirmative vote" of a majority of the membership interest. Under the operating agreement, however, no member could "provide services or property to [RBH], either for consideration or for an additional capital share, without the unanimous written consent of the [m]embers." Nor could a member be compensated "in the capacity as such" without a majority vote. The operating agreement also provided a detailed "Tiered Dispute Resolution Method" that required members to work in "good faith" and engage in negotiation and mediation before resorting to litigation.

From RBH's formation in 2016 until November 2020, Linkenauger and Fraim generally made the business decisions for RBH. Fraim, a certified public accountant, managed RBH's accounting and sent monthly updates to the other two members. In November 2020, Fraim asked Linkenauger and Walker if he could receive ten percent of the rent rolls as compensation for his services. Linkenauger voted no and, per the operating agreement, this should have deprived Fraim of this compensation. Yet the next month Fraim allegedly paid himself "Fees and Commissions" and also stopped providing Linkenauger access to RBH's books.

The relationship between the members continued to deteriorate. In March 2022, Linkenauger discovered over $73,000 had been deducted from RBH's checking account for payments labeled "Repairs and Maintenance" or "Commissions and Fees." These payments were allegedly made to Fraim (fee payments) or to Walker (repairs and maintenance) without a single approval vote. Following this discovery, Linkenauger formally invoked the operating agreement's dispute resolution provision on March 14, 2022, noting Fraim and Walker's

- 2 -

concealment of financial records and the large transfers as the basis of his complaint. In an attempt to negotiate their issues, Linkenauger sent two "dispute letters" to Fraim and Walker in March and May 2022. These letters listed several "proposed solutions" to address Linkenauger's concerns. The parties' efforts to mediate the dispute were unsuccessful.

In August 2022, Linkenauger sued Fraim and Walker derivatively on behalf of RBH. Linkenauger alleged that he had voted against Fraim's request to be compensated for providing RBH's accounting services, denying Fraim the unanimous consent required for compensation under the operating agreement. Linkenauger also asserted that Fraim had "repaid" himself for loan amounts he never gave RBH. Linkenauger also disputed much of RBH's accounting, alleging that the other members did not satisfy certain capital calls and had emptied RBH's bank accounts. Linkenauger contended that Fraim and Walker were liable to RBH for breach of fiduciary duty and breach of the operating agreement. He also asked the circuit court to expel Fraim and Walker as members under Code § 13.1-1040.1(5).

Fraim and Walker filed a plea in bar. They argued that Linkenauger did not have derivative standing under Code § 13.1-1042(A) because he did not "fairly and adequately" represent RBH's interests. They also argued that Linkenauger had not complied with Code § 13.1-1042(B) by providing a "written demand" to RBH 90 days before filing suit. Linkenauger countered that he asserted quintessential derivative claims and a "written demand" under Code § 13.1-1042(B) was excused as futile. At a hearing on the plea in bar, Fraim and Walker testified extensively about RBH's management, the members' course of dealings, and the deterioration of their communication and relationships; Linkenauger did not testify.

The circuit court sustained the plea in bar on alternative grounds. First, the circuit court found that Linkenauger did not have derivative standing based on the eight factors detailed in *Jennings*, 275 Va. at 601-02 (citing *Davis*, 619 F.2d at 593-94). The circuit court's analysis

- 3 -

hinged on its factual findings that "considerable economic antagonism" existed between the parties and that, if Linkenauger received his requested relief, he would "enjoy sole ownership and control" of RBH and its "recently renovated commercial buildings at no cost to himself." The court determined that Linkenauger's "personal interest [was] several magnitudes beyond . . . RBH's" and that he had sought to "exact revenge" on his co-members.

Further, the circuit court ruled that Linkenauger had not sent the other members a written "demand letter" as required by Code § 13.1-1042 before filing suit. The circuit court found that Linkenauger had not proven or pleaded facts sufficient to demonstrate that the demand letter requirement would be futile because, although the parties had engaged in mediation, litigation is a "different approach[]" that can have "adverse effects on individual and professional reputations." This appeal timely follows.

ANALYSIS

On appeal, Linkenauger argues that the circuit court wrongly applied and gave undue weight to certain *Jennings* factors because RBH was "closely held." *Jennings*, 275 Va. at 601-02. He also argues that sending a demand letter would have been futile.

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)). "The movant bears the burden of proof on such a plea, and if evidence is presented ore tenus, the circuit court's factual findings 'are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support.'" *Id.*

"A derivative action is an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation rather than the shareholder." *Simmons v. Miller*, 261 Va. 561, 573 (2001). A member of an LLC "shall not commence or maintain a

derivative proceeding unless the member fairly and adequately represents the interests of the limited liability company in enforcing the right of the limited liability company and is a proper plaintiff pursuant to § 13.1-1043." Code § 13.1-1042(A).

Code § 13.1-1042(B) requires that "[n]o member may commence a derivative proceeding until: (1) [a] written demand has been made on the limited liability company to take suitable action; and (2) [n]inety days have expired from the date delivery of the demand was made."[2] However, such a demand is not required if the plaintiff can prove that demand would be futile. *See Davis v. MKR Dev., LLC*, 295 Va. 488, 492-94 (2018). Invoking the "futility exception," a member can

> allege such a state of facts as will show that the defendants whom he charges with the wrong doing constitute a majority of the board of directors, or managing body at the time of the suit, or that they, or a majority of them, are under the control of the defendant wrong-doers, so that the court may infer that they would refuse to bring such suit; or he must allege such facts in his pleading as will show that it is reasonably certain that a suit by the corporation would be impossible, and that a demand to sue would be useless.

*Mount v. Radford Tr. Co.*, 93 Va. 427, 431 (1896).[3]

---

[2] There is an exception to the 90-day deadline if "(i) the member has been notified before the expiration of 90 days that the demand has been rejected by the limited liability company or (ii) irreparable injury to the limited liability company would result by waiting until the end of the 90-day period." Code § 13.1-1042(B).

[3] The futility exception was eliminated in 1992 for derivative claims against stock corporations. *See* 1985 Va. Acts ch. 522, at 893 (Code § 13.1-672(B) ("A complaint in a proceeding brought in the right of a corporation shall allege with particularity why demand was excused or that demand was made to obtain action by the board of directors and either that the demand was refused or ignored.")), *superseded by* 1992 Va. Acts ch. 802, at 1271 (Code § 13.1-672.1(B) ("No shareholder may commence a derivative proceeding until: 1. A written demand has been made on the corporation to take suitable action . . . .'")); Allen C. Goolsby, Steven M. Haas, *Goolsby & Haas on Virginia Corporations* § 8.2, at 148-50 (7th ed. 2022) (explaining the adoption of the "universal demand requirement"). But as *Davis* explains, the futility exception has not been eliminated for derivative actions against limited liability companies. 295 Va. at 494-96.

Here, the circuit court found that Linkenauger had not "sufficiently pleaded facts to support a conclusion" that demand would be futile. Although the circuit court acknowledged that Linkenauger sent two dispute letters and "unsuccessfully participated in mediation," the court determined that these actions were "insufficient to absolve him from his demand requirement." The circuit court reasoned that

> litigation and mediation address the same problems through different approaches. Further, litigation can have significantly adverse effects on individual and professional reputations. Thus, a demand on warring parties may be sufficient to initiate satisfactory remedial steps.

Consequently, the circuit court held that Linkenauger lacked "standing due to his failure to satisfy the statutory demand requirement."

That finding was not plainly wrong or without evidence to support it. The "dispute" letters were not drafted in anticipation of litigation. In fact, it is clear from the face of the letters that they were drafted as an attempt to negotiate with the other members of RBH. The letters offered "proposed solutions" to certain outlined "disputes." These proposed solutions were personal in nature, such as a suggestion to have a third party perform a valuation of Linkenauger's membership interest and negotiate a buy-out and a request for Fraim and Walker to refrain from demanding capital calls until the conclusion of the dispute resolution process. Thus, the proposed solutions failed to make any demand on RBH or the other members as required by Code § 13.1-1042(B). Furthermore, both defendants testified at the plea in bar hearing that they would have welcomed a request for an accounting, had Linkenauger demanded one. Thus, requiring a demand letter would not have been futile. We therefore hold that the circuit court did not err in finding that these letters fell short of the statutory requirement to make

a written demand on RBH to take suitable action, and affirm the circuit court's judgment on these grounds.[4]

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[4] Because "[w]e have an 'obligation to decide cases on the best and narrowest grounds available,'" we conclude that this holding regarding Code § 13.1-1042(B) is the best and narrowest ground for the resolution of this appeal. *Theologis v. Weiler*, 76 Va. App. 596, 603 (2023) (quoting *Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022)). Therefore, we do not address Linkenauger's remaining assignment of error.