185 F.3d 61 (2nd Cir. 1999)
 LeBOEUF, LAMB, GREENE & MacRAE, L.L.P., Plaintiff-Counter-Defendant-Appellee,
v.
EARL WORSHAM, Defendant-Counter-Claimant-Appellant,
THE WORSHAM GROUP, INC., Defendant-Counter-Claimant.
 Docket No. 98-7941
August Term, 1998
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued April 9, 1999
Decided July 22, 1999
 
 Appeal from a grant of summary judgment in the United States District Court for the Southern District of New York (John F. Keenan, Judge), holding an individual liable for unpaid legal bills. We reverse on the ground that there is a dispute of material fact over whether the services were provided to a corporation.
 VINCENT P. ESPOSITO, JR., LeBoeuf, Lamb, Greene & MacRae, L.L.P. (Robert J. Alessi, of counsel), Albany, New York, for Plaintiff-Counter-Defendant-Appellee.
 EARL S. WORSHAM, pro se, Gatlinburg, Tennessee, for Defendant-Counter-Claimant-Appellant.
 Before: WINTER, Chief Judge, NEWMAN, and SOTOMAYOR, Circuit Judges.
 WINTER, Chief Judge:
 
 
 1
 Earl Worsham, pro se, appeals from Judge Keenan's grant of summary judgment holding Worsham liable for all unpaid bills submitted by the law firm LeBoeuf, Lamb, Greene & MacRae, L.L.P. ("LeBoeuf"). We reverse because there is a genuine dispute over the material fact of whether the legal services were provided to a corporation rather than to Worsham personally.
 
 BACKGROUND
 
 2
 Beginning in October 1992 and for two years thereafter, The Worsham Group, Inc. (TWGI), a group of corporations in which Worsham was one of the principal shareholders, and, allegedly, Worsham personally, received legal services from LeBoeuf. These services dealt primarily with TWGI's ventures in Russia. After various invoices for these legal services went unpaid, LeBoeuf filed the present diversity action against Worsham and TWGI.
 
 
 3
 In its complaint, LeBoeuf sought relief on three overlapping claims: (i) a collection claim on the invoices, (ii) an accounts-stated claim also based on the invoices, and (iii) a quantum meruit claim for the value of LeBoeuf's services. LeBoeuf alleged that Worsham and TWGI were jointly and severally liable on each claim. Following various delays and the withdrawal of Worsham's counsel, see LeBoeuf, Lamb, Greene, & MacRae, L.L.P. v. Worsham, No. 96 Civ. 2942 (JFK), 1998 WL 55370, at *3-*4 (S.D.N.Y. Feb. 11, 1998) (describing litigation history), LeBoeuf moved, inter alia, for summary judgment against Worsham and TWGI on the accounts-stated and quantum meruit claims. Because TWGI failed to oppose the motion, the district court entered a default judgment against it. No appeal has been taken from this ruling.
 
 
 4
 In response to the summary judgment motion, Worsham, representing himself, sent a letter to the district court. The letter made the straightforward argument that LeBoeuf had been hired only by TWGI and not by Worsham in his personal capacity. The letter was signed but unsworn. Nevertheless Worsham stated: "Under penalty of perjury, I make the statements contained herein." The district court granted summary judgment for LeBoeuf and against Warsham on the accounts-stated and quantum meruit claims. See id. at *5.
 
 
 5
 A judgment was entered on February 20, 1998, but it did not specify the dollar amount owed by Worsham. On March 18, 1998, Worsham filed a notice of appeal. On April 13, 1998, this appeal was dismissed for failure to file a pre-argument statement (Form C) and a transcript request (Form D). Meanwhile, LeBoeuf moved in the district court to amend the judgment to reflect a sum certain. The district court amended the judgment on April 16, 1998, stating that Worsham was liable for $197,224.55 plus interest. Worsham then filed a timely notice of appeal from the amended judgment on May 14, 1998.
 
 
 6
 On appeal, Worsham again argues that LeBoeuf provided legal services solely to TWGI. LeBoeuf contends that we lack appellate jurisdiction to entertain this issue because it was waived when the original appeal was dismissed. Moreover, LeBoeuf contends that, even if we do have jurisdiction, there is no genuine issue of material fact in dispute.
 
 DISCUSSION
 
 7
 a) Appellate Jurisdiction
 
 
 8
 According to LeBoeuf, the judgment entered on February 20, 1998, was final. Because Worsham's appeal from it was dismissed on April 13, any appeal from the amended judgment of April 16, which added a sum certain for damages, can relate only to the amount of damages and not liability. We disagree.
 
 
 9
 The February 20, 1998 judgment was not a final judgment. Language in the district court's February 11 opinion states to the contrary, see LeBoeuf, 1998 WL 55370, at *5 ("This case is closed, and the Court directs the Clerk of the Court to remove it from the active docket."), but a district court cannot render a non-final judgment final simply by so stating. The February 20 judgment was non-final because the district court had yet to award damages. "[W]here liability has been decided but the extent of damages remains undetermined, there is no final order." Forschner Group, Inc. v. Arrow Trading Co., 124 F.3d 402, 410 (2d Cir. 1997); see also Republic Natural Gas Co. v. Oklahoma, 334 U.S. 62, 68 (1948); Shimer v. Fugazy (In re Fugazy Express, Inc.), 982 F.2d 769, 775 (2d Cir. 1992) (stating that "a final order is one that conclusively determines the rights of the parties to the litigation, leaving nothing for the district court to do but execute the order"). Worsham's first appeal was premature because a final order was not entered until April 16, 1998. Worsham's second appeal was therefore timely as to both liability and damages, and we have jurisdiction to review both issues.
 
 
 10
 b) The Merits
 
 
 11
 We review the grant of summary judgment de novo. See Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995). Summary judgment should be granted only when, after reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 95 (2d Cir. 1998). The initial burden of demonstrating the absence of a disputed issue of material fact lies with the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); FDIC v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994). If the moving party satisfies this burden, the non-movant "'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).
 
 
 12
 Turning to the merits of the accounts-stated claim, we note that, under New York law,[1] such a claim requires "an agreement between the parties to an account based upon prior transactions between them . . . ." Chisholm-Ryder Co. v. Sommer & Sommer, 421 N.Y.S.2d 455, 457 (N.Y. App. Div. 1979). Such an agreement may be implied if "a party receiving a statement of account keeps it without objecting to it within a reasonable time" or "if the debtor makes partial payment." Id.; see also Rosenman Colin Freund Lewis & Cohen v. Neuman, 461 N.Y.S.2d 297, 298-99 (N.Y. App. Div. 1983). Moreover, "an account stated may be established between an attorney and his client." Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff, 638 F. Supp. 714, 719 (S.D.N.Y. 1986) (citing Rodkinson v. Haecker, 162 N.E. 493 (N.Y. 1928)).
 
 
 13
 To prevail on its motion for summary judgment on the accounts-stated claim, LeBoeuf had to show that, as a matter of law, Worsham personally was the client for whom all the legal services were performed or that he had agreed to pay for all such services rendered to TWGI. LeBoeuf's submissions in support of its motion for summary judgment themselves fail to show that material facts are not in dispute. According to LeBoeuf's statement of undisputed facts, Worsham and TWGI had "engaged LeBoeuf to provide legal services to them," these services were rendered, invoices were sent and received, some invoices had been paid, but a deficiency of $146,042.79 existed. LeBoeuf also submitted the invoices, a number of letters requesting payment, and the checks used to pay certain of the invoices. LeBoeuf's invoices and letters accompanying those invoices were addressed to either:
 
 
 14
 Earl Worsham 
c/o Worsham Group, Inc.
 
 
 15
 or:
 
 
 16
 Earl S. Worsham 
Chairman 
The Worsham Group, Inc.
 
 
 17
 or:
 
 
 18
 Earl S. Worsham 
The Worsham Group, Inc.
 
 
 19
 Moreover, the checks used to pay these bills were drawn on TWGI accounts and not Worsham's personal account.
 
 
 20
 Conspicuously absent from LeBoeuf's submissions is any retainer or fee agreement regarding the legal services it was to perform or for whom they were to be performed. Also absent is any submission indicating that the services were performed for Worsham personally rather than for corporations in which he was a shareholder. To be sure, Worsham was the addressee of the invoices and letters, but that fact hardly resolves the issue of whether he was receiving such correspondence as an individual or as a corporate officer. Indeed, one address used includes Worsham's title as "Chairman of TWGI," a description that weakens rather than supports LeBoeuf's claim. Finally, when LeBoeuf's bills were paid, they were paid by TWGI checks. On this record, there is no basis to conclude as a matter of law that Worsham personally was the client for whom all the legal services in question were performed. Finally, there is no circumstantial evidence or evidence of practice from which a conclusive inference of an agreement by Worsham to pay TWGI's bills might be drawn. Indeed, a trier might well find it easier to absolve Worsham of any liability than to impose it because on this record it appears undeniable that many of the legal services were provided to TWGI.
 
 
 21
 Moreover, Worsham's letter in response to LeBoeuf's motion states that the legal services in question were performed solely for TWGI. LeBoeuf first urges us to disregard the letter because it is conclusory. However, given LeBoeuf's own submissions, it is difficult to see what detail Worsham could have added other than denying that he was LeBoeuf's client in a personal capacity.
 
 
 22
 LeBoeuf also urges that we disregard Worsham's letter because it was unsworn. Although we have held that a district court should disregard an unsworn letter in ruling on a summary judgment motion, see Chaiken v. VV Publishing Corp., 119 F.3d 1018, 1033 (2d Cir. 1997), cert. denied, 118 S. Ct. 1169 (1998); United States v. 143-147 East 23rd St., 77 F.3d 648, 657-58 (2d Cir. 1996), Worsham's letter constituted a declaration pursuant to 28 U.S.C. § 1746 and may properly be considered. Section 1746 allows for the submission of an unsworn declaration to a court if it "is subscribed by [the declarant], as true under penalty of perjury, and dated, in substantially the following form: . . . `I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)'." 28 U.S.C. § 1746 (emphasis added). Worsham's letter states: "Under penalty of perjury, I make the statements contained herein," and it is signed and dated. Although the letter does not contain the exact language of Section 1746 nor state that the contents are "true and correct,"it substantially complies with these statutory requirements, which is all that this Section requires.[2]
 
 
 23
 LeBoeuf's motion for summary judgment on the accounts-stated claim should, therefore, have been denied. See Shea & Gould v. Burr, 598 N.Y.S.2d 261, 262 (N.Y. App. Div. 1993) (upholding denial of summary judgment on accounts-stated claim where law firm could not establish that the services were rendered to defendant).
 
 
 24
 LeBoeuf's quantum meruit claim suffers from similar difficulties. To recover in quantum meruit under New York law, a party must establish "'(1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" Martin H. Bauman Assocs., Inc. v. H&M Int'l Transp., Inc., 567 N.Y.S.2d 404, 408 (N.Y. App. Div. 1991) (quoting Moors v. Hall, 532 N.Y.S.2d 412, 414 (N.Y. App. Div. 1988)); see also Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994). Again, the submissions upon which LeBoeuf relies leave it unclear whether it rendered services for Worsham or TWGI or some combination.
 
 
 25
 LeBoeuf argues that Worsham is liable in quantum meruit because he benefitted from its services as an owner of TWGI. However, as noted, New York law requires more than the receipt of a benefit to support such a recovery. Moreover, LeBoeuf's argument ignores the legal shield between a corporation and its officers, directors, and shareholders. To be sure, legal work for a corporation usually benefits such individuals (and others, such as creditors) by increasing the value of the corporation. But under New York law (and probably the law of all states), "[a] principal attribute of, and in many cases the major reason for, the corporate form of business association is the elimination of personal shareholder liability." We're Assocs. Co. v. Cohen, Stracher & Bloom, P.C., 480 N.E.2d 357, 359 (N.Y. 1985). New York law, like that of other states, also recognizes that officers and directors are, in general, not liable for the debts of the corporation. See id. Although an individual may affirmatively assume personal liability for corporate debts, see We're Assocs. Co. v. Cohen, Stracher & Bloom, P.C., 478 N.Y.S.2d 670, 674 (N.Y. App. Div. 1984), aff'd, 480 N.E.2d 357 (N.Y. 1985), there is no evidence of such an assumption by Worsham. Nor is there any evidence indicating the applicability of New York's legislatively established exceptions to the doctrine of limited liability of shareholders and officers for corporate debts. See, e.g., N.Y. Bus. Corp. Law § 1505(a) (McKinney 1986). Therefore, if a trier of fact were to find that TWGI employed LeBoeuf, as it might easily do on this record, TWGI alone would be liable.
 
 
 26
 LeBoeuf also contends that Worsham's failure to deny certain portions of the amended complaint mandates affirmance. Worsham's answer to the complaint did not deny the allegations in Count III, the quantum meruit claim. Under Rule 8(d), "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." Fed. R. Civ. P. 8(d); see also Weitnauer Trading Co. v. Annis, 516 F.2d 878, 880-81 (2d Cir. 1975). A responsive pleading (an answer) is required to a complaint. See Fed. R. Civ. P. 7(a). Thus, LeBoeuf contends, Worsham has conceded certain facts dispositive to its motion.
 
 
 27
 While it is troubling that no response to this portion of the complaint was made, LeBoeuf is still not entitled to summary judgment. First, the complaint never alleged that Worsham alone retained appellee's services. The complaint did allege that both Worsham and TWGI retained LeBoeuf, and Worsham's answer denied this allegation. Although LeBoeuf repeated this allegation in Count III, see Compl. ¶ 25 ("Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 24 . . . ."), Worsham did not have to deny it a second time.
 
 
 28
 Second, the complaint alleges that LeBoeuf fully performed its obligations for Worsham's and TWGI's benefit and that they would be unjustly enriched if not required to pay. As discussed above, however, even if these facts are assumed to be true, LeBoeuf is not entitled to summary judgment against Worsham on its quantum meruit claim.
 
 
 29
 We therefore reverse.
 
 
 
 NOTES:
 
 
 [1]
 We assume that New York law governs. LeBoeuf's brief relies on New York law, and Worsham makes no argument to the contrary. Any choice of law issues can be clarified, if necessary, in future proceedings.
 
 
 [2]
 Nissho-Iwai American Corp v. Kline, 845 F.2d 1300 (5th Cir. 1988), one of the cases upon which LeBoeuf relies, undermines its position. In holding that an affidavit did not satisfy the requirements of Section 1746, the Fifth Circuit stated that it was "neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury." Id. at 1305- 06 (emphasis added). By listing these requirements in the disjunctive, the Fifth Circuit indicated that a party need not satisfy all of them in order for a court to consider the affidavit.