Kenneth FEINGOLD, Plaintiff,

v.

Douglas CHRISMAS; Ace Gallery La Brea, LLC, d/b/a Ace Gallery, Ace Gallery New York, Ace Gallery Los Angeles, Ace Gallery Beverly Hills, Ace Gallery Beverly Hills Institute of Con-

temporary Art, Art and Architecture
Books of the 21st Century,
Defendants.

No. 10 Civ. 8458 (JSR).

United States District Court,
S.D. New York.

Oct. 12, 2011.

Geoffrey Potter, Norman Warren Kee, Karla Grace Sanchez, Patterson, Belknap, Webb & Tyler LLP, New York, NY, for Plaintiff.

Kenneth James Aronson, Sr., Solo Practitioner, New York, NY, for Defendants.

*MEMORANDUM ORDER*

JED S. RAKOFF, District Judge.

Pending before the Court is the motion of plaintiff Kenneth Feingold for partial summary judgment, seeking the return of plaintiff's artwork, as well as plaintiff's motion for judgment on the pleadings with respect to defendants' counterclaims. For the reasons stated herein, the Court hereby grants plaintiff's motion for partial summary judgment and directs defendants to immediately return plaintiff's artwork. The Court also grants plaintiff's motion for judgment on the pleadings and dismisses defendants' counterclaims for breach of contract, for an account stated, and for unjust enrichment.

Before turning to the plaintiff's motions, the Court notes that, for the reasons stated in open court on June 30, 2011, *see* transcript, it has already denied the defendants' motions concerning venue and for summary judgment. Specifically, the Court denied defendants' motion to dismiss the action for improper venue, concluding that venue was proper based on significant events occurring in the Southern District of New York and also denied defendants' alternative motion to transfer venue in the interests of justice, noting that at this late stage in the litigation it would not be in the interests of justice to transfer the case to a new court. The

Court also dismissed defendants' summary judgment motions, which sought (1) dismissal of all claims against Douglas Chrismas and Ace Gallery La Brea, LLC, and (2) dismissal of the breach of contract and fraudulent inducement claims based on the six-year statute of limitations, finding that disputed issues of material fact precluded the granting of these motions.[1]

While the Court ruled on defendants' motions on June 30, 2011, the Court determined that it could not rule on plaintiff's partial summary judgment motion because of defendants' failure to submit a statement of undisputed facts in accordance with Local Rule 56.1. Notwithstanding this serious violation of the Local Rules, the Court permitted defendants to submit a belated statement of undisputed facts, which they did on July 11, 2011.

The pertinent facts presented at summary judgment, undisputed except where indicated, are as follows.[2] On November 6, 2003, the parties entered into an "Artist Contract" bearing the date November 6, 2003. Parties' Rule 56.1 Statements ¶ 1. On May 6, 2005, the parties completed the execution of another similar contract bearing the date April 28, 2005. *Id.* ¶ 2. On February 23, 2006, the parties completed the execution of a contract addendum bearing the date February 22, 2006. *Id.* ¶ 3. On February 1, 2007, the parties completed the execution of a contract addendum bearing the date January 26, 2007. *Id.* ¶ 4. These agreements granted Ace Art Gallery "exclusive international representation of Ken Feingold's work." *See* Declaration of Norman Kee dated April 27, 2010 ("Kee Decl. of April 27, 2010"), Ex. A (November 6, 2003 agreement) ¶ 1, Ex. B (May 6, 2005 agreement) ¶ 2. In addition to setting forth the division of proceeds and expenses related to Feingold's art, the agreements state that Feingold would receive $7,500 per month to be "applied toward sales of artworks of the artist," *see* Kee Decl. of April 27, 2010, Ex. B ¶ 3, an amount later reduced to $5,000 per month, *see* Kee Decl. of April 27, 2010, Ex. D (February 1, 2007 agreement) ¶ 1.

On May 27, 2009, Feingold informed defendants that they were in breach of contract and that their contractual relationship was over. Declaration of Norman Kee dated June 24, 2011, Ex. F (Deposition of Douglas Chrismas) at 150:17–151:25. He also requested the return of his artwork at that time. *Id.* Feingold's artwork has never been returned to him,

---

1. Specifically, the Court concluded that whether there is a unity of interest and ownership between Douglas Chrismas and the co-defendants and whether Ace Gallery La Brea, LLC is an alter ego of Douglas Chrismas are issues that, taking the facts most favorably to plaintiff, cannot be resolved at this stage. Mr. Chrismas is the president and sole shareholder of Art and Architecture and the sole manager of Ace Gallery La Brea. Indeed, as defendants note in their Memorandum in support of their motions, Mr. Chrismas testified that there is no one else involved in the decision-making process and that all of the business "runs through [him]." Declaration of Norman Kee dated June 24, 2011 Ex. F (Deposition of Douglas Chrismas) at 28:6. Thus, the Court cannot dismiss all claims against Douglas Chrismas and Ace Gallery La Brea, LLC at this stage. With respect to defendants' motion for summary judgment on the breach of contract and fraudulent inducement claims based on the six year statute of limitations, the Court concluded that these claims are not clearly time-barred. While the initial contract granting Ace Gallery exclusive representation of plaintiff's artwork was signed in 2003, subsequent contracts and addendums were signed in 2005, 2006, and 2007. Parties' Rule 56.1 Statements ¶¶ 2–5. Both sides agree that the operative contract is the one signed in 2005, *id.* ¶ 7, and thus, since this action was commenced in November 2010, less than six years from the execution of the 2005 contract, it is not time-barred.

2. Unless otherwise indicated, citations refer to both parties' Rule 56.1 statements.

Parties' Rule 56.1 Statements ¶ 6, though the parties dispute whether Feingold received a full accounting of the artwork retained by defendants. *Id.*

Paragraph 13 of the contract bearing the date April 28, 2005 governs the resolution of financial issues at the end of the parties' contractual relationship. *Id.* ¶ 7. Paragraph 13 provides:

> At the end of the twelve-month exclusive contract, if either party wishes to cancel the above agreement, ninety days notice would be given in writing via confirmed receipt. Any unsold inventory at the end of the ninety days would then be returned to the artist with any money that might be owned by Ace Art Gallery; or if the artist owes Ace Gallery money, the funds would be paid back by the end of the ninety days. *If the artist cannot reimburse Ace Art Gallery at that time, Ace Art Gallery has the right to hold the inventory for another ninety days until it has produced enough sales or decided to acquire the work(s) at the prices established just prior to the cancellation of the agreement to equal the outstanding debt to Ace Gallery.* Then all remaining unsold works would be returned to the artist and all the above terms of the contract become null and void.

*See* Declaration of Norman Kee dated June 13, 2011 ("Kee Decl. of June 13, 2011"), Ex. B ¶ 13 (emphasis added). Defendants allege that plaintiff owed $85,780.13 at the end of the parties' contractual relationship. Parties' Rule 56.1 Statements ¶ 8. Feingold was unable to pay defendants for any alleged debt owed within 90 days of the end of the contractual relationship. *Id.* ¶ 9.

The only public exhibitions of Feingold's works undertaken by defendants were an October 2005 to February 2006 gallery exhibit and an exhibit at the weekend-long January 2007 Los Angeles Art Fair. *Id.* ¶ 10. No further sales were made of Fein-

gold's artwork in the 90 days after the end of the parties' contractual relationship. *Id.* ¶ 11. Although the parties dispute whether defendants made any attempt to acquire artworks from Feingold until after this litigation commenced, the defendants admit that, even after ninety days had passed, they were "trying to get the monies worked out so that [they] knew how to properly apply the amounts of money he owed to the gallery and to what particular artworks." Kee Decl. of June 13, 2011, Ex. F (Deposition of Douglas Chrismas) at 153:24–154:3. The defendants also admit that they never approached auction houses regarding Feingold's art work until January 2011, over two-and-one-half months after this litigation commenced and nearly two years after Feingold ended the parties' contractual relationship. Parties' Rule 56.1 Statements ¶ 13.

In 2005, the parties agreed to a price list for Feingold's artworks; this was the only price list to which the parties ever agreed. *Id.* ¶ 14. The defendants base their claim that Feingold owes defendants $85,780.13 on a four page ledger, with the last entry dated February 7, 2008. *Id.* ¶ 16. After the ninety day period specified by contract had passed, Mr. Feingold made numerous inquiries of defendants regarding the status of the return of his artwork. *Id.* ¶ 18. At the end of Feingold's survey exhibit in early 2006, defendants placed Feingold's artwork into storage, where it remains today. *Id.* ¶ 19. Defendants have retained other artists' work for as many as 20 years. *Id.* ¶ 20. Feingold filed the complaint in this action on November 9, 2010, setting forth causes of action for breach of contract, breach of fiduciary duty, fraudulent inducement, replevin, and, in the alternative, conversion, breach of bailment, and unjust enrichment. *See* Complaint dated November 9, 2010. Defendants, in turn, filed counterclaims for breach of contract, an account stated, and unjust enrich-

ment. *See* Answer to Complaint dated February 8.

■ The Court turns first to plaintiff's motion to dismiss those counterclaims on the pleadings under Fed.R.Civ.P. 12(c). A motion under Fed.R.Civ.P. 12(c) employs the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *Nogbou v. Mayrose*, 400 Fed.Appx. 617, 619 (2d Cir. 2010) (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994)). Thus, the Court must accept as true all well-pleaded facts alleged in the counterclaims and draw all reasonable inferences in the claimant's favor. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). Nonetheless, to survive a motion to dismiss, a counterclaim must include "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

■ The defendants' counterclaims all incorporate the April 28, 2005 agreement between Chrismas and Feingold. *See* Answer to Complaint dated February 8, 2011 ¶¶ 52, 84, 88. Considering first the breach of contract claim, the elements of a breach of contract action under here applicable New York law are "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 913 N.Y.S.2d 161, 162 (1st Dep't 2010) (per curiam). Plaintiff argues that while defendants suggest that few of plaintiff's artworks sold, there was no contractual requirement for plaintiff to create a market for his artwork. With respect to defendants' claim that plaintiff owes defendants money, plaintiff notes that, pursuant to the contracts, if Feingold owed defendants money at the end of the term of the parties' relationship, defendants had the right to acquire works equal to the outstanding debt due to them based on prices agreed

to by the parties. Thus, plaintiff did not breach the contract by not paying defendants directly for any alleged debt.

In response, defendants argue that since the parties agreed to a list of prices for plaintiff's artwork in 2005, but not "just prior" to the contract's cancellation, plaintiff is obligated to reimburse defendants for the amount allegedly owed, failing which defendants are not required to return the art. Notwithstanding the words "just prior," however, defendants' argument does not comport with Paragraph 13 read as a whole. That provision plainly seeks to protect Feingold from having his work held hostage for long periods of time. To allow defendants to vitiate this purpose by refusing to agree on prices "just prior" to cancellation, as the relationship deteriorated, would facilitate just the kind of hold-up the provision is designed to prevent. Thus, the words "just prior" must be read to apply to the latest agreement that still preceded cancellation. Given that the contract expressly provides that if the plaintiff does not reimburse the defendants, defendants' remedy is to hold plaintiff's artwork for ninety days for either sale or acquisition, defendants have not plausibly alleged a breach of contract.

■ Turning to the second counterclaim, an account stated claim requires "an agreement between the parties to an account based upon prior transactions between them." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir.1999) (internal citations omitted). "Such an agreement may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment." *Id.* (internal quotation marks omitted). "[U]nless fraud, mistake or other equitable considerations are shown," the party who receives a statement of account must "examine the state-

ment and make all necessary objections" in order to avoid implication of an agreement. *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 719 (S.D.N.Y. 1986) (citation omitted).

■ Even accepting as true the assertion in defendants' counterclaim that defendants sent Feingold a statement asserting that he owed them $85,780.13, *see* Answer to Complaint dated February 8, 2011 ¶ 85, the contract provides defendants not with a right to sue for an account stated, but instead with a different remedy, i.e., ninety days to sell or acquire plaintiff's artwork at agreed-upon prices. Defendants' failure to pursue that remedy precludes them from pursuing alternative remedies. The 2005 agreement provides that, after defendants' ninety day period expired, "all remaining unsold works would be returned to the artist and all the above terms of the contract become null and void." To permit defendants to now assert an account stated claim would disregard the contract's express provisions. Instead of availing themselves of the remedy the contract provided, defendants would be able to simply wait, defeating the purpose of the contract's remedy, and assert claims that the contract implicitly forbade, namely, legal claims against the artist for money damages. The Court must therefore dismiss the defendants' account stated counterclaim.

■ Turning to the third counterclaim, defendants, to state a claim for unjust enrichment, "must establish (1) that the [plaintiff] was enriched; (2) that the enrichment was at the [defendants'] expense; and (3) that the circumstances are such that in equity and good conscience the [plaintiff] should return the money or property to the [defendant]." *Golden Pac. Bancorp v. FDIC,* 273 F.3d 509, 519 (2d Cir.2001) (applying New York law). An unjust enrichment claim cannot be maintained where a valid contract exists be-

tween the parties. *See Goldman v. Metro. Life Ins. Co.,* 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (2005). Since the existence of valid and enforceable contracts is undisputed in this case, defendants cannot maintain their unjust enrichment claim. While defendants argue that they are permitted to bring unjust enrichment as an alternative to their breach of contract claim, this is only correct when there is some question as to whether the contract is valid. Since, here, there is no dispute that the parties entered into valid and enforceable contracts, defendant's unjust enrichment claim must be dismissed.

With the counterclaims now dismissed, the Court turns to plaintiff's motion for partial summary judgment seeking the return of plaintiff's artwork. Summary judgment is appropriate only where there is "no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[S]ummary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). As noted above, both parties agree that the relevant provision of the contract provides that: "If the artist cannot reimburse Ace Art Gallery at [the end of the contract], Ace Art Gallery has the right to hold the inventory *for another ninety days* until it had produced enough sales or decided to acquire the work(s) at the prices established just prior to the cancellation of the agreement to equal the outstanding debt to Ace Art Gallery" (emphasis added). The defendants admit that no sales occurred within ninety days of the contract's termination, Parties' Rule 56.1 Statements ¶ 11, yet they still have not returned any of Feingold's artwork. *Id.*

¶ 19. Moreover, while defendants dispute that they made no efforts to acquire plaintiff's artworks, they admit that, even after the ninety day period expired, they were "trying to get the monies worked out so that [they] knew how to properly apply the amounts of money he owed to the gallery and to what particular artworks." Kee Decl. of June 13, 2011, Ex. F (Deposition of Douglas Chrismas) at 153:24–154:3. These sustained efforts resulted from defendants' rejection of the price list upon which the parties agreed in 2005. Nonetheless, the contract required defendants to acquire paintings within ninety days based upon "prices established just prior to the cancellation of the agreement."

Resolving all disputed issues of fact in favor of defendant, the Court concludes that defendants failed to comply with the terms of the contract and that plaintiff is entitled to judgment as a matter of law. Having already rejected defendants' contention regarding the words "just prior," the Court concludes that defendant has breached the contract by retaining possession of all of plaintiff's artwork for more than ninety days. Doubtless the defendants feared that the 2005 price list overstated the value of plaintiff's artwork, preventing them from recovering the entirety of plaintiff's debt. Nonetheless, this fear did not relieve them of their contractual obligation, freely undertaken, to obtain their remedy within ninety days and then to return plaintiff's artwork.

Accordingly, the Court grants plaintiff's motion for partial summary judgment and directs defendants to immediately return all of Feingold's unsold artworks to him. The Clerk of the Court is hereby directed to close document numbers 11, 19, and 31 on the docket of the case. The parties are directed to convene a joint telephone call with Chambers within one week of the date of this Memorandum Order to schedule all further proceedings in this case.

SO ORDERED.