**ABBAS CORPORATION (PVT) LIMITED, Plaintiff,**

v.

**MICHAEL AZIZ ORIENTAL RUGS, INC., Defendant.**

**No. 10 Civ. 3440(VM).**

United States District Court, S.D. New York.

Oct. 17, 2011.

Marc Edward Verzani, Law Offices of Marc E. Verzani, New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Abbas Corporation (PVT) Limited ("Abbas") brought this action against defendant Michael Aziz Oriental Rugs, Inc. ("MAOR"), seeking damages for an account stated, breach of contract and unjust enrichment. Abbas alleges that MAOR ordered and received four shipments of carpets from Abbas for which a balance of $438,517.92 remains due. In its counterclaims, MAOR contends that the carpets were accepted pursuant to a joint venture agreement between the parties and seeks damages of $5 million stemming from Abbas's alleged breach of that agreement as well as for business torts. The Court conducted a bench trial on August 15–16, 2011 to adjudicate Abbas's claims and MAOR's counterclaims.

The Court now sets forth its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. As explained below, the Court concludes that Abbas proved by a preponderance of the evidence that MAOR is liable for an account stated in the amount of $438,517.92 plus interest at the statutory rate of nine percent. The Court further concludes that MAOR did not prove by a preponderance of the evidence that the parties entered into a joint venture agreement and, consequently, MAOR failed to show that it is entitled to any damages.

### I. FINDINGS OF FACT [1]

#### A. ABBAS'S CLAIMS

Abbas, located in Lahore, Pakistan, is a manufacturer and exporter of Oriental car-

Nabeena Chatterjee Banerjee, Jamie Paul Polon, Jaffe & Asher LLP, New York, NY, for Plaintiff.

---

1. While the Court has reviewed and considered all of the live testimony and accompanying exhibits admitted in evidence in connection with the trial in this matter, the Court addresses only those portions of the evidence relevant to its legal conclusions.

pets. In or around 1979, Abbas began selling carpets to Michael Aziz ("Aziz") and his brothers, who were then in business together as importers and wholesalers of Oriental carpets. The Aziz brothers later separated into several business entities and Aziz formed MAOR, a New York corporation. MAOR continued to import carpets from Abbas.

Abbas typically sold carpets to MAOR on credit terms known as "D/A," or documents against acceptance. Abbas shipped the carpets together with an invoice stating the amount owed, but payment was not due until 180 days from the date of the invoice. Credit could then be extended by Abbas for another 180 days.

Abbas now seeks to recover on four invoices reflecting four shipments of carpets to MAOR:

- Invoice No. 3364, issued on October 7, 2008, reflecting an amount due of $111,059.57. (*See* Pl. Trial Ex. 2.) MAOR made payments of $10,000.00 and $25,000.00 on September 29, 2009, and February 13, 2010, respectively. A balance of $76,059.57 remains due under Invoice No. 3364.

- Invoice No. 3390, issued on December 17, 2008, reflecting an amount due of $147,150.66. (*See* Pl. Trial Ex. 4.) The full balance remains due under Invoice No. 3390.

- Invoice No. 3402, issued on February 3, 2009, reflecting an amount due of $86,156.77. (*See* Pl. Trial Ex. 5.) The full balance remains due under Invoice No. 3402.

- Invoice No. 3417, issued on March 16, 2009, reflecting an amount due of $129,150.92. (*See* Pl. Trial Ex. 6.) The full balance remains due under Invoice No. 3417.

Thus, the total amount due under Invoice Nos. 3364, 3390, 3402 and 3417 is $438,517.92. MAOR did not object to the admission of these invoices or contest their accuracy. (*See* Trial Tr. 45:14–23; 308:2–12.)

## B. *MAOR'S COUNTERCLAIMS*

MAOR's defense at trial was that it was not obligated to pay for the carpets because the shipments were accepted pursuant to an alleged joint venture agreement between the parties. In August of 2008, Aziz, together with his son and business partner Mark Aziz, traveled to Lahore, Pakistan to meet with representatives from Abbas. Present from Abbas were Chief Executive Officer Ali Abbas Mirza ("Mirza"), Mirza's brother Tahir Abbas Mirza and Mirza's son Ahmad Abbas Mirza (collectively, "the Mirzas"). According to Mark Aziz, the Mirzas told him and his father that "they wanted to form a partnership, joint venture between our family and their family." (Trial Tr. 256:19–23.) Mark Aziz further testified that the purpose of the joint venture was for Abbas to replace lost business with increased business from MAOR and, ultimately, to relocate Abbas out of Pakistan because of political unrest. In exchange, Mark Aziz testified, Abbas was to provide funds with which MAOR would increase its buying from Abbas. Abbas was also, according to Mark Aziz, to provide MAOR with exclusive access to certain product lines.

Abbas did, in fact, provide funds in order for MAOR to purchase goods from Abbas. Mirza visited MAOR in New York in September of 2008 and provided a check for $500,000. (*See* Pl. Trial Ex. 8.) In connection with the payment, Aziz and Mirza executed a loan agreement reflecting a term of three years and an interest rate of five percent. (*See* Pl. Trial Ex. 7.) MAOR asserts that Aziz executed the agreement under duress and that the parties did not contemplate repayment of the $500,000. (*See* Trial Tr. 272:12–15 (Mark Aziz testifying) ("This was not a loan. This was one shot of many shots of half

million dollars that was to be brought to us to pay for these [D/A] shipments in accordance with this partnership agreement which they proposed to us in Lahore.").)

MAOR relies on the testimony of Mark Aziz to prove its claim of a joint venture. In the Court's view, much of Mark Aziz's testimony is the product of wishful thinking. While there is evidence that the parties did meet in Pakistan in August of 2008 and had lengthy discussions about forming some type of business relationship, nothing supports a reasonable finding that those talks amounted to more than general exploratory ideas. MAOR produced no testimony or document setting forth agreement containing any of the essential terms of a joint venture, most fundamentally accord on sharing of profits and losses, establishing bank accounts, or allocation of control over management and operational responsibilities. It strains credulity that Abbas would agree to, in essence, buy carpets from itself. It further strains common sense that Abbas would grant exclusivity to MAOR, a small importer and a relatively minor customer of Abbas, at the risk of alienating its major customers. Indeed, Mirza testified credibly that Abbas "cannot give [exclusivity] even to Marjan's, the largest customer. [Abbas] operate[s] freely.... [Abbas] did exclusivity [only] once...." (Trial Tr. 28:8–11.)

In addition to its joint venture claims, MAOR asserts that Abbas maliciously and with wanton disregard for MAOR's rights (1) intentionally inflicted harm on MAOR and (2) interfered with MAOR's prospective business relations. These claims are premised upon events that transpired after the market for Oriental carpets shrank in the wake of the global economic crisis. MAOR had difficulty paying for the volume of carpets it had imported from Abbas. In lieu of payment, MAOR agreed to return $762,903.84 worth of carpets to Abbas. (*See* Pl. Trial Ex. 31.)

Abbas subsequently sold the returned carpets to another importer, Marjan International Corporation ("Marjan"), for a lower price than it had offered MAOR. Seeking to restock its inventory, MAOR later accepted the same carpets on consignment from Marjan. Meanwhile, certain of MAOR's retail customers failed to pay invoices issued by MAOR. MAOR asserts that its customers refused or were unable to pay because Abbas had sold the same carpets at a lower price to other importers and retailers, who then undercut MAOR's customers on price. MAOR seeks damages for these business woes, for which it blames Abbas.

## II. CONCLUSIONS OF LAW

### A. ABBAS'S CLAIMS

■ Under New York law, to recover on its claim for an account stated Abbas must prove that: "(1) an account was presented; (2) it was accepted as correct; and (3) debtor [i.e., MAOR] promised to pay the amount stated." *See IMG Fragrance Brands, LLC v. Houbigant, Inc.,* 679 F.Supp.2d 395, 411 (S.D.N.Y.2009). "The second and third requirements (acceptance of the account as correct and a promise to pay the amount stated) may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment." *Id.* (internal quotation marks omitted); *see also LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham,* 185 F.3d 61, 64 (2d Cir.1999).

■ Here, MAOR does not dispute that it received Abbas's invoices without objecting to them. During the trial, Mirza testified:

Q. Did [MAOR] ever reject the invoices or say the invoices are wrong or the prices?

A. Any invoice can be turned down. They never did.

(Trial Tr. 45:14–23.) Mark Aziz confirmed that MAOR never objected to.the invoices at issue:

Q. And you could have rejected the invoice when the invoice came in with the goods; you could have said, "I don't like the price, sorry, take your goods back, give me another invoice." Did you ever do that?

A. No.

(Trial Tr. 308:2–12.) Moreover, MAOR does not dispute that it failed to remit full payment due under the invoices. In fact, confirming its acceptance of the goods and liability for payment, MAOR remitted to Abbas $35,000 against the invoice for the first shipment of carpets at issue. Because Abbas presented each of the four invoices to MAOR and MAOR kept the invoices without objecting to them, the Court finds that Abbas has proven each of the elements of its claim for an account stated under Invoice Nos. 3364, 3390, 3402 and 3417. *See Premier Steel, Inc. v. Hunterspoint Steel LLC,* No. 10 Civ. 4206, 2010 WL 5248583, at *3 (S.D.N.Y. Dec. 10, 2010). Abbas is therefore entitled to judgment on those invoices in the amount of $438,517.92 plus interest at the statutory rate of nine percent. *See* N.Y. C.P.L.R. §§ 5001, 5004.

■ Because the relief sought by Abbas on its claims for breach of contract and unjust enrichment against MAOR is identical to the relief it seeks under its account stated claim, Abbas's breach of contract and unjust enrichment claims are dismissed. *See Premier Steel,* 2010 WL 5248583, at *3.

## B. *MAOR'S COUNTERCLAIMS*

### 1. *Joint Venture Claims*

■ MAOR insists that it is not liable for the balance due under the invoices because of an alleged joint venture agree-ment between the parties. "Under New York law, a joint venture is formed when (a) two or more persons enter into an agreement to carry on a venture for profit; (b) the agreement evinces their intent to be joint venturers; (c) each contributes property, financing, skill, knowledge, or effort; (d) each has some degree of joint control over the venture; and (e) provision is made for the sharing of both profits and losses." *SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329, 342 (2d Cir.2004). A provision to share profits and losses is "indispensable" to the formation of a joint venture. *Dinaco, Inc. v. Time Warner, Inc.,* 346 F.3d 64, 68 (2d Cir.2003).

■ In support of its claim for a joint venture, MAOR relies on the testimony of Mark Aziz. However, Mark Aziz admitted both on direct and cross examination that the parties did not reach an agreement as to the sharing of profits and losses. Mark Aziz testified on direct examination:

Q. Mark, did there ever come a time where there was a discussion as to profits?

A. Yes.... It was very complicated. My father and I had talked about it and he had asked and I basically shrugged it off and I said, Don't worry about it. We'll discuss it later on.

(Trial Tr. 266:18–267:16.) He confirmed on cross examination:

Q. Was there a discussion of the sharing of profits and losses in that meeting in the summer of '08 or was there not?

A. As I said, this was one of the questions that I randomly raised later on while I was with them [i.e., the Mirzas], and during direct I talked about the answer I got and how it was extremely complicated, so my father later on asked me, "What's going to happen with profits?" And my answer to him was, "It's compli-

cated. We'll get to it later on. We'll get it figured out."

(Trial Tr. 315:17–316:7.) Even if the Court were to accept the testimony of Mark Aziz described above, that testimony would be insufficient to establish the creation of a joint venture as a matter of law. " '[I]t is not enough that the parties have agreed together to act in concert to achieve some stated economic objective.' " *Ammirato v. Duraclean Int'l*, No. 07 Civ. 5204, 2011 WL 2730918, at *11 (E.D.N.Y. July 13, 2011) (*quoting Steinbeck v. Gerosa*, 4 N.Y.2d 302, 175 N.Y.S.2d 1, 151 N.E.2d 170, 179 (1958)). Absent an agreement as to the sharing of profits and losses, MAOR's claim for a joint venture fails. *See id.* at *12. Because MAOR's first and second counterclaims' are premised upon an enforceable joint venture agreement between the parties, those counterclaims are dismissed.

### 2. *Tort Claims*

 MAOR's third counterclaim alleges prima facie tort. To recover on this claim under New York law, MAOR must prove: "(1) intentional infliction of harm (2) causing special damages (3) without excuse or justification (4) by an act or series of acts that would otherwise be lawful." *Picture People, Inc. v. Imaging Fin. Servs., Inc.*, 735 F.Supp.2d 12, 21–22 (S.D.N.Y.2010). To satisfy the third element, MAOR must prove that Abbas's conduct was "done with the sole intent to harm" and not for motives such as "profit, self-interest or business advantage." *Id.* at 22. MAOR has presented no evidence from which the Court can reasonably conclude that in its dealings with MAOR Abbas was motivated solely by malice and intent to harm MAOR, rather than by profit. Abbas had a legitimate business interest in offering discounted prices to its largest customers, such as Marjan, and not to smaller customers, such as MAOR. That Abbas had a legitimate, economic motive is fatal to MAOR's claim for prima facie tort. *See id.* MAOR's fourth counterclaim, for tortious interference with prospective business relations, fails for the same reason. *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 785 N.Y.S.2d 359, 818 N.E.2d 1100 (2004).

By letter dated July 17, 2011, MAOR sought permission to amend its counterclaims by substituting a claim for fraud for the second counterclaim. The Court reserved ruling on the proposed amendment until after the close of the evidence. (*See* Trial Tr. 2:15–25.) In light of the findings of fact and conclusions of law described above, the Court finds that the evidence adduced at trial could not sustain a claim for fraud. The Court therefore denies MAOR's request for leave to amend.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that judgment shall be entered in favor of plaintiff Abbas Corporation (PVT) Limited against defendant Michael Aziz Oriental Rugs, Inc. ("MAOR") in the amount of $438,517.92 plus interest at the rate of nine percent per year from the date of each underlying invoice as to the amount owed under that invoice until the date of payment; and it is further

**ORDERED** that the counterclaims (Docket No. 15) of defendant MAOR are **DISMISSED**; and it is finally

**ORDERED** that the motion for leave to amend that the Court has deemed contained in the July 17, 2011 letter (Docket No. 36) submitted by MAOR is **DENIED**.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**