# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PENN-AMERICA INSURANCE COMPANY,
            *Plaintiff-Appellant,*

v.

APRIL DAWN MAPP; ACH
CORPORATION OF CHESAPEAKE,
INCORPORATED,
            *Defendants-Appellees.*

No. 06-2279

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry Coke Morgan, Jr., Senior District Judge.
(2:06-cv-00119-HCM)

Argued: November 1, 2007

Decided: March 20, 2008

Before WILLIAMS, Chief Judge, and TRAXLER
and KING, Circuit Judges.

---

Dismissed by published opinion. Judge King wrote the opinion, in
which Chief Judge Williams and Judge Traxler joined.

---

## COUNSEL

**ARGUED:** Robert Barnes Delano, Jr., SANDS, ANDERSON,
MARKS & MILLER, Richmond, Virginia, for Appellant. Bryan Karl
Meals, MCGUIREWOODS, L.L.P., Norfolk, Virginia, for Appellees.
**ON BRIEF:** Albert M. Orgain, IV, W. Ashley Burgess, SANDS,

ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appellant. Stephen E. Heretick, HAMPTON & HERETICK, P.L.C., Portsmouth, Virginia, for Appellee April Dawn Mapp; William H. Baxter, II, MCGUIREWOODS, L.L.P., Richmond, Virginia, for Appellee ACH Corporation of Chesapeake, Incorporated.

---

## OPINION

KING, Circuit Judge:

Penn-America Insurance Company seeks to appeal from the district court's Opinion and Order granting partial summary judgment to ACH Corporation of Chesapeake, Incorporated, and April Dawn Mapp. *See Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 2d 442 (E.D. Va. 2006) (the "Opinion"). Penn-America initiated the underlying declaratory judgment proceeding in the Eastern District of Virginia, seeking declarations, inter alia, that it had no duty to defend or indemnify its insured, ACH, against tort claims being pursued by Mapp in Virginia state court. By its Opinion, the district court resolved the duty to defend issue in favor of ACH, but withheld ruling on the indemnification issue. The court then dismissed the proceeding from its "active docket," subject to reinstatement upon "motion by any party." *Id.* at 459. As explained below, the Opinion does not constitute an appealable decision and this appeal must be dismissed.

### I.

### A.

On the evening of July 4, 2003, Joshua Bristol and his friend, Timothy Dodd, travelled by motorcycle to the Three Cheers bar (owned and operated by ACH), in a strip mall in Portsmouth, Virginia.[1] During the evening, Bristol consumed several drinks purchased from the bar. Bristol and Dodd exited the bar a few minutes before closing time.

---

[1]The facts spelled out herein are drawn primarily from Mapp's state court pleadings and from a stipulation of relevant facts filed by the parties in the declaratory judgment proceeding.

After going outside the bar, Bristol and Dodd were approached by three women — Marie Fly, Michelle Fly, and Mapp — who asked for a motorcycle ride. Bristol agreed and rode off with Marie Fly, driving in a "weaving, looping, and curling fashion" around the strip mall's parking lot next to the bar. *Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 446 (E.D. Va. 2006). Nearing a driveway between the parking lot and the bar, Bristol briefly stopped, but then accelerated toward a crowd that had departed the bar. Bristol, who appeared intoxicated, collided with Mapp, seriously injuring her. The accident occurred at about 1:55 a.m. on July 5, 2003, twenty-five minutes after the bar had closed.

Charles Huneycutt owns ACH, the entity that owned and operated the Three Cheers bar when Mapp was injured. On the day of the accident, Huneycutt learned of it from his brother, who advised that Mapp "was not in good shape" and "appeared to be hurt pretty bad." *Penn-Am. Ins.*, 461 F. Supp. 2d at 447. At the time, ACH was insured by Penn-America under a commercial general liability policy (the "Policy").[2] The provisions of the Policy included the following: (1) a liquor liability exclusion, barring coverage for bodily injury or property damage liability resulting from ACH's "causing or contributing to the intoxication of any person" (the "Liquor Liability Exclusion"); and, (2) a notice provision, requiring ACH to notify Penn-America "as soon as practicable" of any "occurrence" or "offense" that may result in a claim (the "Notice Provision"). Policy §§ I.2.c, IV.2.

Almost two years after the accident, Mapp filed suit against ACH in Virginia state court, seeking compensatory and punitive damages for injuries sustained in the accident (the "Mapp Action"). Mapp alleged negligent, grossly negligent, deliberate, and wanton conduct on the part of ACH. She asserted that ACH had sold alcohol to Bristol, rendering him too intoxicated to legally operate his motorcycle. Mapp further alleged that ACH had done so with notice and with "actual and constructive knowledge" that Bristol would unlawfully operate his motorcycle on the bar's premises, creating an "imminent probability of harm" to Mapp, as an ACH business invitee. *Penn-Am. Ins.*, 461 F. Supp. 2d at 446. Mapp also alleged that ACH had violated

---

[2]The Policy is found at J.A. 20-96. (Citations to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

its duty of care to warn and protect her from imminent harm, based on theories of "dram shop" and premises liability.

On June 29, 2005, two days after ACH was served in the Mapp Action, ACH first notified Penn-America of the accident, by providing it with a copy of Mapp's state court complaint (called a "Motion for Judgment").[3] On July 14, 2005, Penn-America advised ACH that, pursuant to the Policy, it would initially defend ACH in the Mapp Action, but reserved the right to thereafter disclaim coverage and seek reimbursement of defense costs if "Penn-America had no duty to defend under its policy." J.A. 97.

### B.

On March 6, 2006, Penn-America initiated the declaratory judgment proceeding (the "DJ Action") against ACH and Mapp (collectively, the "Appellees") in the Eastern District of Virginia, asserting diversity jurisdiction and seeking declarations, inter alia, that the Policy did not obligate it to either defend or indemnify ACH. Penn-America's contentions had two bases: (1) that ACH had breached the Notice Provision, negating Penn-America's obligations under the Policy; and (2) that Penn-America's defense and indemnity obligations for the Mapp Action were barred by the Liquor Liability Exclusion. About a month later, on April 14, 2006, the state court granted in part ACH's motion to dismiss the Mapp Action. That is, the court dismissed the dram shop liability aspects of the Mapp Action, but declined to dismiss the premises liability claims.

In late 2006, Penn-America sought summary judgment in the DJ Action, and the Appellees moved for dismissal or summary judgment. After considering the parties' cross-submissions, the district court issued its Opinion on November 17, 2006, resolving certain of the issues presented and withholding resolution of the indemnification

---

[3]Huneycutt asserted that he had failed to notify Penn-America earlier because he believed that ACH had no legal exposure, in that the accident occurred half an hour after the bar closed, in a parking lot area that ACH had no obligation to make safe. Huneycutt expected that any litigation arising from the accident would be limited to criminal charges against Bristol.

issue. As a threshold matter, the court determined that it could exercise jurisdiction in the DJ Action without interfering with the Mapp Action. *Penn-Am. Ins.*, 461 F. Supp. 2d at 449-52. The court then ruled, concerning the Notice Provision, that ACH's delay in providing Penn-America notice of the accident was not material, and that its tardiness did not void Penn-America's obligations under the Policy. *Id.* at 454-55. The court also determined that, although the Liquor Liability Exclusion relieved Penn-America of any defense or indemnity obligations to ACH on the dram shop claims, it did not preclude such obligations on the premises liability claims, which were sufficiently alleged and pending in the Mapp Action. *Id.* at 457-58. The court thus ruled that, as a matter of law, Penn-America was contractually obligated to defend ACH against the premises liability claims. *Id.* at 458.

Significantly, although the district court decided that the Liquor Liability Exclusion did not relieve Penn-America of its duty to defend ACH on the premises liability claims, the court declined to decide whether Penn-America was ultimately obliged to indemnify ACH against those claims. The court recognized that, "[b]ecause the factual allegations in the underlying [Mapp Action], if proven, may give rise to a duty to indemnify, only after the State Court has made its decision will this Court be in a position to evaluate whether or not [Penn-America] has a duty to indemnify." *Penn-Am. Ins.*, 461 F. Supp. 2d at 458. Accordingly, the court decided that "[t]he issue of [Penn-America's] duty to indemnify ACH, should it be found liable to Ms. Mapp [on the premises liability claims], is not ripe for decision by this Court." *Id.* The court thus determined "that a decision on [Penn-America's] duty to indemnify should be withheld until the State Court reaches its decision on the merits." *Id.* at 459. With the indemnification issue yet unresolved, the court dismissed the DJ Action from its active docket, providing that it "may be reinstated upon proper motion by any party to this proceeding." *Id.* The Judgment, entered three days later, on November 20, 2006, specified that the court was "dismissing this case from the active docket." J.A. 246. Penn-America filed a timely notice of appeal, and this proceeding ensued.[4]

---

[4]Penn-America's DJ Action also sought declaratory relief concerning two additional Policy provisions — a punitive damages exclusion, and a provision capping coverage per occurrence and also in the aggregate. Although the district court disposed of those issues in its Opinion, they are not implicated in this appeal.

## II.

### A.

Before we can assess the merits of Penn-America's contentions on appeal, we must determine whether we possess jurisdiction. In that regard, Penn-America maintains that we possess appellate jurisdiction under 28 U.S.C. § 1291. The Appellees dispute jurisdiction, however, maintaining that the district court did not finally resolve the DJ Action and did not render an appealable decision under § 1291.

As a general proposition, jurisdiction in the courts of appeals is limited to the review of final decisions of the district courts, *see* 28 U.S.C. § 1291, including certain otherwise interlocutory orders properly deemed to be final. *See* Fed. R. Civ. P. 54(b) (allowing for appeal of one or more but fewer than all substantive claims in action involving multiple parties or multiple claims, where judgment is final as to certain claims or parties, and there is no just reason for delay); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (recognizing right of appellate review under collateral order doctrine when ruling conclusively determines claim of right "separable from, and collateral to, rights asserted in the action," and presents serious legal question not otherwise reviewable on appeal). We are also entitled, in carefully circumscribed and appropriate circumstances, to review on appeal certain interlocutory orders involving, inter alia, injunctions, as well as difficult and controlling legal issues. *See, e.g.*, 28 U.S.C. § 1292(a)(1) (identifying as appealable orders awarding injunctive relief); 28 U.S.C. § 1292(b) (establishing certification procedure for certain otherwise interlocutory decisions involving controlling legal issues).

As noted above, the parties dispute whether the district court's Opinion was final and thus reviewable under § 1291. Although § 1291 does not undertake to define the term "final decision," the Supreme Court has explained that an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). In seeking to eliminate the universally disfavored pursuit of "piecemeal" appeals, the jurisdictional finality prerequisite of § 1291 promotes the interests of judicial efficiency and also serves to limit litigation costs.

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981); *MDK v. Mike's Train House, Inc.*, 27 F.3d 116, 119 (4th Cir. 1994).

In its Opinion here, the district court resolved only one of the two claims before it. After concluding that Penn-America had a duty to defend ACH in the Mapp Action, the court observed "that a decision on [Penn-America's] duty to indemnify should be withheld until the State Court reaches its decision on the merits." *Penn-Am. Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 459 (E.D. Va. 2006). The court then went on to specify that the DJ Action would be "dismissed from [the court's] active docket and . . . may be reinstated upon proper motion by any party to this proceeding." *Id.* The Judgment, entered three days later, was consistent with the Opinion, specifying that the court was "dismissing this case from the active docket." J.A. 246.

Although the Opinion and Judgment each referred to the court's "active docket," neither the Federal Rules of Civil Procedure nor the Local Rules for the Eastern District of Virginia define or establish an "active docket," or, for that matter, create or define an "inactive docket." In our unpublished decision in *Doe v. Shalala*, we recognized that the removal of a case from a court's "active docket" is the functional equivalent of an administrative closing, which does not end a case on its merits or make further litigation improbable. 26 F. App'x 338, 339 (4th Cir. 2002) (declining to exercise § 1291 jurisdiction in appeal from order administratively closing civil action, because order was "neither a final order, nor an appealable interlocutory or collateral order," but "merely remove[d] the case from the district court's active docket"). Our sister circuits have similarly construed an order removing a case from a court's "active docket" as an "administrative closing" — a designation that does not independently satisfy the finality mandate of § 1291. *See, e.g.*, *WRS, Inc. v. Plaza Entm't, Inc.*, 402 F.3d 424, 427 (3d Cir. 2005) ("[A]n order administratively closing a case is not, in and of itself, a final order . . . ."); *Penn W. Assocs. Inc. v. Cohen*, 371 F.3d 118, 128 (3d Cir. 2004) ("[A]n order merely directing that a case be marked closed constitutes an administrative closing that has no legal consequence other than to remove that case from the district court's active docket."); *Lehman v. Revolution Portfolio, LLC*, 166 F.3d 389, 392 (1st Cir. 1999) ("[A]n administrative closing has no effect other than to remove a case from the court's

active docket and permit the transfer of records associated with the case to an appropriate storage repository.")

Put simply, an otherwise non-final order does not become final because the district court administratively closed the case after issuing the order. A reviewing court must consider whether an order is final and appealable without regard to the existence of the administrative closure. Thus, in *Dees v. Billy*, the Ninth Circuit concluded that it lacked jurisdiction to review an order staying a medical malpractice action, compelling arbitration, and administratively closing the case. 394 F.3d 1290 (9th Cir. 2005). In so ruling, the court rejected the plaintiff's contention that the administrative closing rendered the stay order a final, appealable order: "[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect." *Id.* at 1294; *see also LeBoeuf, Lamb, Greene, MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999) (characterizing case as "closed" and directing removal from "active docket" was not appealable final decision, because district court had yet to award damages); *Lehman*, 166 F.3d at 392 (finding no error in district court's decision to reopen case administratively closed pending bankruptcy, because administrative closing was not final order).

In the context of these guiding principles, it is clear that neither the Opinion nor the Judgment terminated the underlying coverage litigation on the merits: The district court decided against Penn-America on the duty to defend issue, but declined to resolve the indemnification issue pending further proceedings in state court. Given this unresolved indemnification issue, the court's dismissal of the DJ Action from its "active docket" did not convert its otherwise non-final Opinion into a final judgment under 28 U.S.C. § 1291. Furthermore, the proviso of the Opinion that the DJ Action "may be reinstated upon proper motion by any party to this proceeding" plainly indicates that dismissal from the "active docket" was not the court's final word. *See Fla. Ass'n for Retarded Citizens, Inc. v. Bush*, 246 F.3d 1296, 1298 (11th Cir. 2001) (administrative closing is not final because it does not preclude court from reactivating case of its own accord or at request of parties). In these circumstances, the Opinion does not con-

stitute a final judgment, and we are therefore not entitled to review it under 28 U.S.C. § 1291.

In so concluding, we observe that an administrative closing of a lawsuit does not preclude a district court from determining, pursuant to Rule 54(b), that aspects of an otherwise non-final decision should be deemed as final and thus immediately appealable. Such a Rule 54(b) certification is, of course, appropriate only where the district court, in its discretion, determines that one or more but fewer than all claims are final, and that there is no just reason to delay an appeal. *See* Fed. R. Civ. P. 54(b) (providing that court may direct entry of final judgment "as to one or more but fewer than all of the claims . . . upon an express determination that there is no just reason for delay, and upon an express direction for the entry of judgment"); *see also Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980); *Braswell Shipyards, Inc. v. Beazer E., Inc.*, 2 F.3d 1331, 1334-36 (4th Cir. 1993).

In certain situations, an administrative closing may function much like a formal stay of proceedings, where separable claims are made appealable under Rule 54(b). We recently exercised jurisdiction in such a situation, reviewing a declaratory ruling — certified as final under Rule 54(b) — concerning an insurer's duty to defend, where additional contentions on indemnity and bad faith had been stayed in the lower court. *See Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631 (4th Cir. 2005) (exercising jurisdiction based on Rule 54(b) determination and reversing ruling against insurer on duty to defend). There, the district court decided that the interests of judicial economy would be best served by a Rule 54(b) certification, in that an appellate ruling that the insurer was not obliged to defend would "end this coverage case," mooting the indemnification and bad faith issues. *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 323 F. Supp. 2d 709, 723 (E.D. Va. 2004). In this case, however, a Rule 54(b) determination was neither sought by Penn-America nor independently made by the district court.

## B.

In concluding that the Opinion is not a final decision under § 1291, we must also reject Penn-America's contention that a dismissal of its

appeal will deprive it "of any means to obtain appellate review of its duty to indemnify," and that the Opinion is reviewable on appeal because it was "conclusive in practical effect." Reply Br. of Appellant 16, 17.[5] Penn-America's sole support for this contention is a Seventh Circuit decision. *See Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, 392 F.3d 939 (7th Cir. 2004). In that case, the district court decided the duty to defend issue against an insurer, deemed it premature to rule on the related indemnification issue while the underlying action remained pending in state court, and "dismissed the whole *suit* 'without prejudice,' even though its resolution of the duty-to-defend issue [was] conclusive." *Id.* at 940. As a consequence of the dismissal, the insurer faced the prospect that, if its insured prevailed in state court, "there would be no further dispute about indemnity and no reason to renew the federal litigation." *Id.* In that circumstance, the insurer would be left "without a means to obtain appellate review of the duty-to-defend question, for by then it would be too late to appeal the federal judgment." *Id.* The court of appeals assessed the "jurisdictional problem" created by the dismissal without prejudice, and decided to exercise § 1291 jurisdiction under the principle that "when the district judge misdescribes as 'without prejudice' a disposition that is *conclusive in practical effect*, the court of appeals possesses jurisdiction." *Id.* at 941 (emphasis added) (concluding that, "because the parties have fully briefed the duty-to-defend question, and it turns out to be dispositive of all issues, we resolve it now").

Unfortunately for Penn-America, *American States* is readily distinguishable from the situation here, where the district court simply removed the DJ Action from its active docket, retaining jurisdiction in the matter rather than dismissing it without prejudice. In removing the DJ Action from its active docket, the court even satisfied the dicta of *American States*, that "[i]t would have been better had the district court stayed proceedings until the underlying suit reached a conclu-

---

[5]Surprisingly, in making this contention, Penn-America emphasizes that it is being deprived of appellate review on the indemnification issue, which has not been resolved and remains pending in the DJ Action. It would seem to make more sense for Penn-America to assert that its ability to appeal the duty to defend ruling has been jeopardized. In any event, as discussed *infra*, there is nothing to prevent our later review of either or both issues, once the DJ Action has concluded in the district court.

sion," as "[t]he loser or losers in the federal litigation then could have appealed from a truly final disposition." 392 F.3d at 941. Moreover, in contrast to *American States* (where the insurer's ability to appeal the duty to defend ruling was hindered), we see no impediment to Penn-America's future ability to appeal the district court's rulings on either its duty to defend or indemnify ACH.

Put simply, should ACH subsequently be found liable to Mapp in state court, Penn-America could then pursue relief in the DJ Action on the indemnification issue. A ruling on that issue — either favorable or unfavorable — should put the DJ Action to rest and constitute an appealable decision. Penn-America could then pursue an appeal on the duty to defend ruling of the Opinion and, if necessary, the district court's ultimate disposition of the indemnification issue as well. On the other hand, should ACH prevail in the Mapp Action, the indemnification issue of the DJ Action should be subject to dismissal for mootness. And, at that time, the duty to defend ruling of the Opinion would be ripe for appeal. In either event, if this Court thereafter rules that the duty to defend issue was improperly resolved against Penn-America in the district court, Penn-America could, pursuant to its reservation of rights with respect to the defense of ACH in the Mapp Action, seek reimbursement of its defense costs. In sum, the administrative closing effected by the Opinion has not deprived Penn-America of its right to appeal any adverse rulings made in the DJ Action.[6]

## III.

Pursuant to the foregoing, the Opinion of November 17, 2006, is not appealable, and we lack jurisdiction to review it. We therefore

---

[6]To the extent Penn-America seeks to rely on the "conclusive in practical effect" language of *American States* as a basis for appellate jurisdiction under the collateral order doctrine, such an assertion is without merit and is also rejected. *See Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546 (1949) (authorizing immediate appeal of otherwise interlocutory decision that (1) conclusively resolves question in dispute; (2) disposes of important issue that is separate from merits; and (3) is effectively unreviewable on appeal from final judgment); *see also Under Seal v. Under Seal*, 326 F.3d 479, 481-84 (4th Cir. 2003) (embracing and applying "three factor test" for collateral order doctrine).

dismiss this appeal.

*DISMISSED*