<u>**UNPUBLISHED**</u>

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**No. 11-2157**

OFFICE OF STRATEGIC SERVICES, INCORPORATED, on behalf of US
Smoke & Fire Curtain, LLC,

Plaintiff – Appellant,

v.

STEVEN SADEGHIAN; US SMOKE & FIRE SERVICES, LLC; CYSA
DEVELOPMENT MANAGEMENT CORPORATION,

Defendants – Appellees.

**No. 11-2160**

OFFICE OF STRATEGIC SERVICES, INCORPORATED; STEWART H.
CHRIST,

Plaintiffs – Appellants,

v.

STEVEN SADEGHIAN; US SMOKE & FIRE SERVICES, LLC; CYSA
DEVELOPMENT MANAGEMENT CORPORATION,

Defendants – Appellees.

OFFICE OF STRATEGIC SERVICES, INCORPORATED, on behalf of US Smoke & Fire Curtain, LLC; STEWART H. CHRIST; OFFICE OF STRATEGIC SERVICES, INCORPORATED,

               Plaintiffs – Appellees,

     v.

STEVEN SADEGHIAN; US SMOKE & FIRE SERVICES, LLC; CYSA DEVELOPMENT MANAGEMENT CORPORATION,

               Defendants – Appellants.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:11-cv-00195-CMH-JFA)

Argued: January 29, 2013          Decided: June 14, 2013

Before KING, WYNN, and DIAZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Terrance Gilroy Reed, LANKFORD & REED, PLLC, Alexandria, Virginia, for Office of Strategic Services, Incorporated, on behalf of US Smoke & Fire Curtain, LLC, Stewart H. Christ, and Office of Strategic Services, Incorporated. C. Thomas Hicks, III, DIMURO, GINSBERG PC, Alexandria, Virginia, for Stewart H. Christ, and Office of Strategic Services, Incorporated. Joseph Luchini, REED SMITH, LLP, Falls Church, Virginia, for Steven Sadeghian, US Smoke & Fire Services, LLC, and CYSA Development Management Corporation. **ON BRIEF:** Robert K. Moir, LANKFORD & REED, PLLC, Alexandria, Virginia, for Office of Strategic Services, Incorporated, on behalf of US Smoke & Fire Curtain, LLC. Bernard J. DiMuro, DIMURO, GINSBERG PC, Alexandria,

Virginia, for Stewart H. Christ, and Office of Strategic Services, Incorporated.  Edward A. Pennington, MURPHY & KING, PC, Washington, D.C., for Steven Sadeghian, US Smoke & Fire Services, LLC, and CYSA Development Management Corporation.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The torrent of claims in these consolidated appeals has its genesis in smoke and fire curtains. Fire curtains are products used to compartmentalize fire zones and completely close off an opening in a wall during a fire. Smoke curtains, on the other hand, do not completely close off openings, rather they create smoke reservoirs or direct smoke to an engineered extraction point.

The litigation fireworks in these cases began with Office of Strategic Services, Inc. ("OSS") filing a complaint asserting eleven shareholder derivative claims against Steven Sadeghian, U.S. Smoke & Fire Services, LLC, and CYSA Development Management Corporation (collectively, the "Sadeghian Parties"), alleging that they usurped corporate opportunities belonging to U.S. Smoke & Fire Curtain, LLC ("Curtain") and asserting violations of Curtain's intellectual property rights. The Sadeghian Parties returned fire in their answer to the complaint, lodging eighteen counterclaims[1] against OSS and Stewart Christ. Not to be outdone, OSS and Christ replied by filing five counter-counterclaims against the Sadeghian Parties.

---

[1] The counterclaim purports to list nineteen claims, but there is no Count 4 in the pleading. The pleading also purports to lodge claims against an entity named Second Street Web Design, but that party is not named in the caption.

4

The district court dismissed the counter-counterclaims in an order entered on August 12, 2011. Following cross-motions for summary judgment, the district court dismissed all other claims.

For the reasons that follow, we affirm in part, vacate in part, and remand.[2]

I.

A.

We begin with a brief description of the relationship between the parties. OSS, a company wholly owned by Christ, and CYSA Development Management Corporation ("CYSA"), a company wholly owned by Sadeghian, together own a third company, Curtain. Christ is Curtain's President, and Sadeghian its CEO. Curtain was formed as a Virginia limited liability company on July 7, 2009. U.S. Smoke & Fire Services, LLC ("Services") is a separate corporation wholly owned by CYSA. Bradley Lomas Electroluk ("BLE") is a British corporation engaged in the business of manufacturing smoke and fire curtains.

Between 2003 and 2008, CYSA installed BLE's smoke curtains in various projects throughout the United States. According to

_____

[2] We also deny the Sadeghian Parties' separate motion to amend the caption.

5

the Sadeghian Parties, Sadeghian and BLE also discussed creating a network of distributors for BLE's fire curtains as early as 2008, and these discussions led to the formation of Curtain. The Sadeghian Parties claim that OSS and Christ owned no part of Curtain until the execution of the Curtain Operating Agreement (the "COA") on August 28, 2009. Under the COA, CYSA owned 51% of Curtain, and OSS owned the remaining 49%.

The COA provides that Curtain's purpose is to "market, sell and distribute smoke and fire curtains in the United States." J.A. 408. Despite this language, the Sadeghian Parties say that BLE agreed to allow CYSA to continue distributing BLE's smoke curtains outside of Curtain's distribution network.

OSS and Christ, on the other hand, insist that in late 2008 and early 2009, both Sadeghian and Christ began discussions with BLE to sell "all of BLE's products in the United States[,] including both smoke and fire curtains." J.A. 466 ¶ 34. Sadeghian and Christ formed Curtain in furtherance of this arrangement, selecting the term "Smoke & Fire Curtain" based upon Christ's marketing analysis and recommendation. J.A. 465.

B.

On July 13, 2009, Sadeghian, acting on behalf of Curtain, signed a distribution agreement with BLE (the "CDA"). Under the CDA, Curtain agreed to act "as [BLE's] exclusive distributor to import and distribute the Products in [the United States]."

6

J.A. 383 ¶ 2.1. The CDA defined "Products" as including "Electrically Operated Automatic Smoke and Fire Curtains," "Fixed Smoke and Fire Curtains," and "Associated equipment." J.A. 382, 403. In another subsection of the CDA, BLE granted Curtain "the exclusive rights to sell the BLE fire curtain products for fire door, fire shutter, and fire door replacement applications" and "non-exclusive sales and installation rights for all other fire curtain applications, and all other associated BLE products." J.A. 383 ¶ 2.2.

The CDA also included a "Trademarks" section, in which BLE granted Curtain a license to use its trademarks for the promotion, advertising, and sale of its products. Per the CDA, Curtain did not acquire any "right, title or interest in any of the marks or any additional trademark which may be developed unless specifically granted such pursuant to the terms of a separate license agreement." J.A. 390 ¶ 10.5.

Three days after the CDA was signed, Sadeghian formed Services as a subsidiary of CYSA. BLE and Services signed a separate distribution agreement (the "SDA"), in which Services agreed to act as BLE's "exclusive distributor to import and distribute the Products" in the United States. J.A. 244 ¶ 2.1. "Products" was given the same definition that it had in the CDA. See J.A. 263. The SDA further provided that "[Services] will have the rights to sell the BLE smoke & fire curtain products

7

EXCEPT for fire door, fire shutter, and fire door replacement applications. [Services] will have non-exclusive sales and installation rights for all other fire curtain applications, and all other associated BLE products." J.A. 244 ¶ 2.2. The SDA also contained a "Trademarks" section identical to that found in the CDA.

OSS and Christ complain that at no time in 2009 did Sadeghian disclose to Christ that he was negotiating with BLE for contractual rights other than those he was pursuing on Curtain's behalf. J.A. 361 ¶ 35. To the contrary, Sadeghian hid the existence of the SDA from Christ until March 2010. The Sadeghian Parties respond that OSS and Christ were aware of the SDA from the beginning of their participation in the venture.

C.

The parties agree that smoke and fire curtains were to be sold online. To facilitate such sales, CYSA purchased the domain "www.ussmokeandfirecurtain.com" on April 14, 2009. CYSA later contracted with another company to design a website using that domain. According to the Sadeghian Parties, when a customer wanted to purchase a fire curtain through the website, Curtain processed the transaction, and when a customer wanted to purchase a smoke curtain through the website, Services did the honors.

8

On March 12, 2010, Christ filed a trademark application in Curtain's name for "U.S. Smoke & Fire Curtain Life Safety, Accessibility, Design Freedom."  The U.S. Patent and Trademark Office initially rejected the application because, among other reasons, the application was incomplete and the proposed mark was descriptive.  The Sadeghian Parties say that the U.S. Patent and Trademark Office issued a final rejection of the application on February 2, 2011.  OSS and Christ, on the other hand, contend that Curtain was granted the trademark on March 6, 2012.

On April 5, 2010, Christ filed a trademark application for "Elevator Shield" without seeking BLE's consent.  This application was granted and registered as U.S. Reg. No. 3,867,681.

The Sadeghian Parties allege that during March and April 2010, OSS and Christ began operating a "shadow" Curtain company, using a separate bank account and contact information.  The Sadeghian Parties also allege that OSS and Christ copied the CYSA website for this purpose and linked it to the www.ussmokefirecurtain.com domain.

II.

The first three counts of OSS's derivative complaint alleges intellectual property claims under the Lanham Act and the Anticybersquatting Consumer Protection Act.  Specifically,

9

OSS alleges that the Sadeghian Parties infringed upon trademarks belonging to Curtain--including "Elevator Shield" and "U.S. Smoke & Fire Curtain Life Safety, Accessibility, Design Freedom"--and copied Curtain's website and domain name. Counts four through eleven of the complaint essentially allege (in eight different ways) that Sadeghian breached his fiduciary duty to Curtain by using CYSA and Services to usurp Curtain's corporate opportunities.

The Sadeghian Parties filed eighteen counterclaims against OSS and Christ, claiming to assert derivative claims on behalf of Curtain as well as direct, personal claims. OSS and Christ responded by filing five counter-counterclaims against the Sadeghian Parties. The Sadeghian Parties moved to dismiss the counter-counterclaims, arguing that they were actually derivative claims on behalf of Curtain, and thus should have been filed as an amendment to the derivative complaint. The district court granted that motion.

The Sadeghian Parties subsequently moved for summary judgment on OSS's derivative complaint, arguing that under the CDA, Curtain did not have the right to distribute BLE smoke curtains. As a result, it was impossible for the Sadeghian Parties to have improperly competed with Curtain or usurped any corporate opportunity. OSS filed a cross-motion for summary judgment, and both OSS and Christ moved for summary judgment on

10

CYSA's derivative counterclaims and CYSA's request to judicially dissolve Curtain.

On September 16, 2011, the district court entered a single-page order stating that the court was "of the opinion that Summary Judgment should be GRANTED to Defendants on the Complaint and GRANTED to Plaintiff/Counterdefendants on the Counterclaims" and ordering the case removed from the court's trial docket. J.A. 773. The order indicated that a memorandum opinion and order would be forthcoming.

On November 29, 2011, the district court entered its memorandum opinion and order. First, the court granted the Sadeghian Parties' motion for summary judgment as to OSS's fiduciary duty claims. The court concluded that the CDA gave Curtain the right to sell and distribute fire curtains only, whereas the SDA gave Services the right to sell and distribute smoke curtains. Because Curtain did not have the right to sell smoke curtains, it was not possible for the Sadeghian Parties to have taken or diverted such a corporate opportunity from Curtain.

The district court also granted summary judgment to the Sadeghian Parties on OSS's intellectual property claims. Considering OSS's claims under the Lanham Act, the court held that neither OSS nor Curtain owned any of the alleged marks, and therefore they lacked standing to sue. Moreover, the court

11

noted that the Sadeghian Parties could lawfully use the alleged marks because they owned the rights to the name "U.S. Smoke & Fire Curtain."

The court then evaluated the claims as to each alleged trademark: First, because OSS sought a trademark for "Elevator Shield" without BLE's consent, the trademarks were invalid and could not be the basis for an infringement claim. Next, the court evaluated OSS's claims regarding its then-pending trademark of "U.S. Smoke & Fire Curtain Life Safety, Accessibility, Design Freedom" under common law. The court held that the infringement claims failed because the mark was descriptive, the Sadeghian Parties had prior use, and there was no evidence that the Sadeghian Parties had used the phrase apart from their promotion of Curtain. Finally, OSS's cybersquatting claim in count one failed because Curtain did not own the "www.ussmokeandfirecurtain.com" domain or website.

The court next turned to OSS and Christ's motion for summary judgment on the counterclaims. The court noted that, under Virginia law, entity owners with interests antagonistic to their entity cannot simultaneously represent it in a derivative action. Because CYSA was a defendant seeking judgment against Curtain in OSS's derivative suit, it could not simultaneously serve as Curtain's representative for purposes of the derivative counterclaims. The court further noted that CYSA did not make

12

the requisite written demand upon Curtain before filing its derivative counterclaims, and it was too late to cure the defect. As a result, the court granted OSS and Christ summary judgment on the Sadeghian Parties' derivative counterclaims.

The district court's accompanying order dismissed the entire action. On December 23, 2011, the Sadeghian Parties filed a Rule 59 motion to alter or amend the district court's judgment. The district court denied the Rule 59 motion on January 31, 2012, and the Sadeghian Parties gave notice of appeal on February 6, 2012. OSS and Christ also filed notices of appeal.

### III.

We address the issues raised by OSS and Christ in their appeals before turning to the Sadeghian Parties' cross-appeal. Because the district court disposed of this case at summary judgment, we review the facts and reasonable inferences therefrom in the light most favorable to the non-moving party. Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011).

#### A.

OSS first argues that the district court erred in granting summary judgment to the Sadeghian Parties on the breach of fiduciary duty claims in the derivative complaint. OSS contends that the district court failed to consider Sadeghian's fiduciary

13

duty not to usurp corporate opportunities properly belonging to Curtain and his duty to secure intellectual property rights for Curtain.[3]  OSS further contends that the district court did not credit its evidence, which it claims should have been sufficient to preclude summary judgment.  In addition, OSS claims that the district court erred in failing to exclude parol evidence and in relying on that evidence in deciding the motion.[4]

---

[3]  We reject OSS's claim that Sadeghian (through CYSA) breached his fiduciary duty to acquire intellectual property rights for Curtain.  The case cited by OSS, In re Access Cardiosystems, Inc., 340 B.R. 127 (Bankr. D. Mass. 2006), is factually inapposite.  There, a corporation was formed by its president in order to design, manufacture, and sell emergency defibrillators.  Id. at 134.  Once the product design was complete, the president filed a patent application in his own name, contending that he alone had conceived all of the inventive portions of the product prior to the company's incorporation.  Id. at 149.  The court held that the president had breached his fiduciary duty to the corporation by failing to disclose that he intended to assert complete ownership over the intellectual property.  Id. at 150.  The court also pointed out that the corporation had spent millions to develop and manufacture the product, and therefore ownership of the underlying intellectual property was essential to its viability. Id.

In contrast, Curtain was engaged in the business of distributing curtain products, not creating intellectual property or trademarks.  Nor are the marks at issue in this case essential to Curtain's viability.  In any event, as we explain later, although there is conflicting evidence regarding the development and original ownership of Curtain, it is clear that CYSA used the phrase "U.S. Smoke & Fire Curtain" well before Curtain's formation.

[4] OSS also argues that the district court erred in granting the Sadeghian Parties' motion in light of the court's finding that they had a conflict of interest.  The court, however, found
(Continued)

14

The Sadeghian Parties respond that they alone owned Curtain when the opportunity to distribute smoke curtains first arose and thus were free to exploit it for themselves. They also say that Curtain never had the right to distribute smoke curtains because all parties understood that it was formed for the sole purpose of distributing fire curtains.

We are constrained to agree with OSS that the district court erred in granting summary judgment on the breach of fiduciary duty claims.

A corporate officer owes the duties of "utmost good faith" and loyalty to his corporation. Feddeman & Co. v. Langan Assocs., 530 S.E.2d 668, 673 (Va. 2000).[5] An officer breaches his fiduciary duty to his company if he diverts corporate opportunities to himself. Today Homes, Inc. v. Williams, 634 S.E.2d 737, 742-43 (Va. 2006). An officer also cannot compete with his own company. Williams v. Dominion Tech. Partners, LLC, 576 S.E.2d 752, 757 (Va. 2003). The duty of loyalty is enforced by imposing upon officers the burden of: (1) disclosing

---

only that CYSA had a conflict of interest in filing derivative counterclaims on Curtain's behalf and rectified it by dismissing those claims.

[5] The COA is governed by Virginia law.

corporate opportunities to the company, and (2) obtaining its consent to exploit them.  Today Homes, 634 S.E.2d at 743.

The district court was wrong to grant summary judgment to the Sadeghian Parties on the breach of fiduciary duty claims. To begin with, the court said nothing about the Sadeghian Parties' contention that Sadeghian owed no duty of loyalty to Curtain when the opportunity to sell smoke curtains arose because the Sadeghian Parties' alone owned Curtain at the time. That contention, however, is refuted by the record, which includes a July 8, 2009, e-mail from Sadeghian to Christ in which Sadeghian acknowledges that OSS is in fact a part owner of Curtain.  See J.A. 500.  We note further that the distribution agreement with BLE--where the opportunity to sell smoke curtains first arose--was not signed until July 13, five days after the email in question.  Thus, we have before us a classic factual dispute on an issue that matters.

And because the issue matters, the district court's stated reason for granting summary judgment fails.  The district court based its decision on the distribution agreements themselves, concluding that their language showed that Curtain could not distribute smoke curtains.  The district court, however, failed to consider Sadeghian's fiduciary duty to Curtain prior to the execution of the distribution agreements and OSS's argument that the CDA may not have given Curtain the right to distribute smoke

curtains precisely because Sadeghian failed to disclose the opportunity. Moreover, although the Sadeghian Parties contend that Christ understood that Curtain was created to distribute fire curtains only, both the name of the company ("U.S. Smoke & Fire Curtain, LLC") and the statement in the COA that Curtain was formed to "market, sell and distribute smoke and fire curtains in the United States" suggest otherwise.

In sum, on this record, a jury could find that that OSS owned part of Curtain when the opportunity to sell smoke curtains first arose. A jury could further find that Sadeghian was bound to disclose that opportunity to Curtain before exploiting it for himself. Accordingly, we vacate the district court's judgment as to counts four through eleven of OSS's derivative complaint and remand them for further proceedings.[6]

---

[6] In light of our decision, we need not reach OSS's argument that the district court improperly relied on parol evidence in granting summary judgment to the Sadeghian Parties. Nor need we decide whether (as the district court concluded) BLE's alleged refusal to allow Curtain to sell smoke curtains constitutes an exception to the corporate opportunity doctrine. We note that Virginia courts have not yet addressed this particular issue. The general rule though is that a refusal to deal does not, by itself, constitute an exception: "Where an officer claims the reason he or she appropriated the opportunity is that the other party would not have dealt with the corporation anyway, the business transaction will not be immune from attack unless the officer unambiguously discloses to the corporation the fact of the other party's refusal to deal, along with a fair statement of the reasons for that refusal." 3 Fletcher Cyclopedia of Corporations § 862.10; see also Energy Res. Corp., Inc. v. Porter, 438 N.E.2d 391, 394 (Mass. App. Ct. 1982). We leave (Continued)

17

B.

OSS also challenges the district court's grant of summary judgment to the Sadeghian Parties on the intellectual property claims (counts one through three) in the derivative complaint. We address each claim separately.

1.

OSS argues that the district court erred in granting summary judgment on the intellectual property claims related to Curtain's alleged trademark of "Elevator Shield." The district court held that Curtain violated the CDA by filing its trademark application without BLE's consent, and thus the trademark is invalid. OSS contends that the Sadeghian Parties lack standing to invoke BLE's rights. OSS also contends that the CDA does not prevent Curtain from registering its own trademarks.

The Sadeghian Parties respond that OSS's derivative claim for infringement of the "Elevator Shield" trademark fails because Curtain could not validly obtain the mark in the first place. They contend the terms of the CDA prevent Curtain from registering a trademark for any BLE product.

In order to assert a claim for trademark infringement or unfair competition under the Lanham Act, a plaintiff must prove,

_____

this question (as well as the parol evidence issue) for the district court to consider anew on remand.

18

among other things, that he or she possesses the mark at issue. See 15 U.S.C. §§ 1114, 1125(a); see also, e.g., People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001). A party may assert the invalidity of the mark as a defense to an infringement claim. 15 U.S.C. § 1115; see also Hiram Walker & Sons v. Penn-Maryland Corp., 79 F.2d 836 (2d Cir. 1935).

In general, a nonparty to an agreement may not enforce the contract against one of the signatories. See Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc., 202 F.3d 223, 229 (4th Cir. 2000); see also General Cigar Co. v. GDM Inc., 988 F. Supp. 647, 661-62 (S.D.N.Y. 1997) (applying the rule in a trademark action). There is an exception to this rule when a contractual relationship exists between the defendant in a trademark action and the third party, which would give the defendant (usually a licensee of the third-party's mark) superior trademark rights if the third party's rights were vindicated. Lapinee Trade, Inc. v. Paleewong Trading Co., 687 F. Supp. 1262, 1264 (N.D. Ill. 1988). Here, there is no evidence that Services licensed Elevator Shield from BLE, and therefore the general rule applies, meaning that only Curtain and BLE have the right to enforce the CDA against one another. To the extent the Sadeghian Parties are attempting to enforce the CDA as a third-party beneficiary, Virginia law requires that they show that the

19

contracting parties clearly and definitely intended to confer a benefit upon them. Food Lion, 202 F.3d at 229. Because the record does not so show, the Sadeghian Parties are barred from asserting a defense to the trademark claim based upon BLE's rights.

Accordingly, the district court erred in dismissing the "Elevator Shield" claims in counts two and three of the derivative complaint.

2.

OSS argues that the district court erred in granting summary judgment on the claims regarding the "www.ussmokeandfirecurtain.com" website and domain name. OSS argues that the court ignored evidence showing that Christ created the marks. The Sadeghian Parties respond that both the website and the domain name belong to CYSA, and therefore OSS lacks standing to assert the claims on behalf of Curtain.

OSS has alleged violations of the Anticybersquatting Consumer Protection Act ("ACPA") in count one of the derivative complaint, and of the Lanham Act in counts two and three. Both the ACPA and the Lanham Act obligate a plaintiff to show ownership of a valid protectable trademark, among other requirements. See 15 U.S.C. § 1125(d)(1)(A) ("A person shall be liable in a civil action by the owner of a mark . . . ."); Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d

20

922, 930 (4th Cir. 1995) (holding that a "valid, protectable trademark" is necessary to establish a claim of trademark infringement or unfair competition under the Lanham Act).

The uncontroverted evidence shows that CYSA developed the ussmokeandfirecurtain.com website and owns a registered copyright for the site. Although OSS contends that Christ created the domain name, it presented no evidence supporting this allegation. Christ's affidavit regarding the website says only that he helped select the domain name, see J.A. 465-66, and any legal conclusions in the affidavit were properly ignored by the district court, see J.A. 466 ¶ 33; see also, e.g., Avrigan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

Because OSS does not own the intellectual property at issue, it lacks standing to state claims under the Lanham Act or the ACPA. Accordingly, we affirm the district court's grant of summary judgment to the Sadeghian Parties on these claims.

3.

OSS next argues that the district court erred in dismissing its Lanham Act claims related to its trademark of "U.S. Smoke & Fire Curtain Life Safety, Accessibility, Design Freedom." OSS argues that the district court erroneously found that the trademark application was rejected, as the trademark has been registered with the U.S. Patent and Trademark Office.

21

The trademark registration, however, does not change the fact that OSS failed to show that the Sadeghian Parties actually used the mark. A cause of action for trademark infringement or unfair competition under the Lanham Act requires a plaintiff to prove, inter alia, that the defendant used the mark. Doughney, 263 F.3d at 364. The district court concluded that there was "no evidence to support the proposition that [the Sadeghian Parties] used ['U.S. Smoke & Fire Curtain Life Safety, Accessibility, Design Freedom'] apart from business conducted on behalf of Curtain."[7] J.A. 803-04. Our review of the record confirms that the district court was correct, and we therefore affirm the grant of summary judgment to the Sadeghian Parties on these claims.

C.

Finally, in their supplemental brief, OSS and Christ assert that the district court erred in dismissing their counter-counterclaims. OSS and Christ argue that the court erroneously characterized the claims as derivative, and that they had the

---

[7] At the time of the district court's writing, Curtain had not yet been granted a trademark of the phrase, and therefore the court evaluated only that part of the alleged mark that had not been previously rejected as "descriptive." As a result, the district court's holding refers only to the "Life Safety, Accessibility, Design Freedom" part of the alleged mark. See J.A. 803.

right, under Fed. R. Civ. P. 13, to file the claims without requesting leave of court.

The district court found that although the claims asserted by OSS and Christ were nominally direct and personal, they were in fact derivative claims that could only be asserted by Curtain. In the court's view, the proper vehicle for pursuing these claims was via an amendment to the derivative complaint.

Rule 13(a)(1)(A) states that counterclaims must be included in responsive pleadings if they arise out of the same transaction or occurrence. Rule 15, on the other hand, allows for amendment of existing pleadings as a matter of course within twenty-one days of service. Fed. R. Civ. P. 15(a)(1). After such time has expired, a pleading may only be amended with the opposing party's consent or with leave of court. Fed. R. Civ. P. 15(a)(2). We review the court's denial of leave to amend a complaint for abuse of discretion. Balas v. Huntington Ingalls Indus., 711 F.3d 401, 409 (4th Cir. 2013).

The first question presented, therefore, is whether OSS and Christ's claims were direct and personal or whether they were truly amendments to the derivative complaint. We find that the claims were derivative in nature and therefore could only be pursued via an amendment to OSS's complaint.

OSS and Christ attempted to bring claims against the Sadeghian Parties for (1) breach of the COA, (2) tortious

23

interference with Curtain's rights and business expectancies under the COA and CDA, (3) statutory conspiracy to harm Curtain by diverting contractual and business rights and breaching fiduciary duties, (4) common law conspiracy to do the same, and (5) unjust enrichment via revenues belonging to Curtain. See J.A. 1071-76. Despite their artful pleading, these claims all deal with harm allegedly inflicted upon Curtain. For example, the revenues that are referred to in the unjust enrichment claim belonged to Curtain; in the same way, if Sadeghian breached the COA, he could do so only in his role as CEO of Curtain.

Corporate shareholders cannot bring direct individual suits against officers and directors for breaches of fiduciary duty; their remedy is derivative on behalf of the corporation. Simmons v. Miller, 544 S.E.2d 666, 674 (Va. 2001). Virginia has declined to adopt the exception to this rule allowing individual suits in cases of closely held corporations. Id. at 675.[8]

We agree with the district court that the counter-counterclaims were in fact derivative and therefore should have been asserted as amendments to the derivative complaint. Nor did the district court err in denying leave to amend. The

---

[8] We deal here with a limited liability company, but the analysis remains the same.

24

counter-counterclaims were filed late in the trial schedule--the Sadeghian Parties' responses to the claims would have been due after discovery had closed and just days before exhibits and witness statements were due to the court. See J.A. 339-40. We have previously upheld a denial of leave to amend because its timing would have unduly prejudiced the opposing party. See, e.g., Intown Props. Mgmt., Inc. v. Wheaton Van Lines, Inc., 271 F.3d 164, 170 (4th Cir. 2001). We find no abuse of discretion and therefore affirm the district court's ruling.

IV.

We turn now to the cross-appeal, which presents three issues for our review. First, the Sadeghian Parties argue that the district court erred in granting summary judgment to OSS and Christ on CYSA's derivative counterclaims due to CYSA's conflict of interest. Second, the Sadeghian Parties contend that the district court erred in dismissing sua sponte their direct counterclaims with prejudice. Finally, they assert that the district court erred in granting without explanation OSS and Christ's motion for summary judgment on CYSA's claim to judicially dissolve Curtain.

We first dispose of a challenge to our jurisdiction over the cross-appeal, before turning to the merits.

25

A.

OSS and Christ question our jurisdiction over the cross-appeal, arguing that the Sadeghian Parties failed to file a timely notice of appeal. OSS and Christ say that the September 16, 2011 order was the district court's final judgment and that the Sadeghian Parties' Rule 59 motion, filed on December 23, 2011, could not have tolled the deadline for filing a notice of appeal because it was filed more than twenty-eight days after the final judgment.

The Sadeghian Parties respond that the district court did not enter its final judgment in this case until it filed the November 29, 2011 memorandum opinion and order. As a result, the Sadeghian Parties assert that their Rule 59 motion successfully tolled the deadline for filing the appeal.

We hold that we have jurisdiction to consider the cross-appeal. Under Rule 4 of the Federal Rules of Appellate Procedure, a notice of appeal must be filed within thirty days of entry of the judgment or order. Fed. R. App. P. 4(a)(1)(A). A timely Rule 59 motion, however, serves to toll the time requirement, and the time to file a notice of appeal runs from the entry of the order disposing of the motion. Fed. R. App. P. 4(a)(4)(A)(iv). Rule 59 motions to alter or amend a judgment must be filed within twenty-eight days of the entry of judgment. Fed. R. Civ. P. 59(e).

26

"[A]n order is final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Penn-America Ins. Co. v. Mapp, 521 F.3d 290, 294 (4th Cir. 2008) (internal quotations omitted). In determining whether an ambiguous judgment is final, "the intention of the judge to dispose of all the business before him or her" provides valuable insight. Vaughn v. Mobil Oil Exploration & Producing Se., Inc., 891 F.2d 1195, 1197 (5th Cir. 1990). Additionally, "removal of a case from a court's 'active docket' is the functional equivalent of an administrative closing, which does not end a case on its merits or make further litigation improbable." Mapp, 521 F.3d at 295. Therefore, "an otherwise non-final order does not become final because the district court administratively closed the case after issuing the order." Id.

We conclude that the November 29, 2011 order, rather than the September 16, 2011 order, is the final judgment in this case. The September 16 order did not constitute a final judgment for two reasons: First, the order did not "leave nothing for the court to do but execute the judgment" as the court still had to prepare and file the opinion and order. Second, the order did not unequivocally grant either motion. Rather, the court said only that it was "of the opinion that Summary Judgment should be GRANTED." J.A. 773 (emphasis added). In our view, this language did not foreclosure the possibility

27

that the district court could decide differently.  In fact, the district court's only definitive action on September 16 was to remove the case from the trial docket, which by itself did not end the case on the merits.

The Sadeghian Parties filed their Rule 59 motion on December 23, 2011, well within the twenty-eight days allowed from the date of the district court's entry of final judgment, which we conclude occurred on November 29, 2011.  Accordingly, we have jurisdiction over the cross-appeal.

B.

Turning to the merits, the district court found that CYSA's interests were antagonistic to Curtain, as evidenced by the Sadeghian Parties' motion for summary judgment on OSS's derivative complaint as well as the Sadeghian Parties' counterclaims.  As a result, the court held that CYSA had a conflict of interest in representing Curtain in the derivative counterclaims.  In addition, the court noted that CYSA had failed to make demand upon Curtain, as required by both Fed. R. Civ. P. 23.1 and Va. Code § 13.1-1042B.  Although this error was curable, the court noted that Virginia law afforded a company ninety days to respond to a demand, and trial was less than ninety days away.  Accordingly, the court granted OSS and Christ summary judgment and dismissed the Sadeghian Parties' counterclaims.

28

As an initial matter, a review of the Sadeghian Parties' counterclaim reveals that the parties intended to assert direct as well as derivative claims. The pleading explicitly states that CYSA brought certain claims "on its own behalf and derivatively." J.A. 86. In addition, certain claims could only have been brought directly, such as the copyright infringement and cybersquatting claims regarding ussmokeandfirecurtain.com, based upon the fact that CYSA, rather than Curtain, owned the website. As a result, we will consider the court's dismissal of the derivative and direct claims separately, beginning with the former.

The Sadeghian Parties contend that CYSA had standing to pursue the derivative counterclaims because Curtain was improperly aligned with OSS and Christ, rather than with them. Second, the Sadeghian Parties say that there were no procedural defects in the derivative counterclaims. They assert that the statute cited by the district court was not in effect at the time of their pleading, and that, in any event, the court's decision to dismiss the derivative counterclaims is an abuse of its discretion and conflicts with its earlier denial of a motion to dismiss these very same claims. We find no error in the district court's decision as to these claims.

In a derivative suit, the corporation (or as here, the limited liability company) is initially named as a defendant to

ensure its presence, after which it may be aligned according to its real interests. Smith v. Sperling, 354 U.S. 91, 97 (1957); see also Lewis v. Odell, 503 F.2d 445 (2d Cir. 1974). The question of whether to realign the corporation as a plaintiff is "a practical not a mechanical determination and is resolved by the pleadings and the nature of the dispute." Smith, 354 U.S. at 97.

> Thus, if the complaint in a derivative action alleges that the controlling shareholders or dominant officials of the corporation are guilty of fraud or malfeasance, then antagonism is clearly evident and the corporation remains a defendant. On the other hand, if the individual plaintiff is the majority stockholder or a controlling officer, then the corporation cannot be deemed antagonistic to the suit and it should be realigned as a plaintiff.

Liddy v. Urbanek, 707 F.2d 1222, 1224-25 (11th Cir. 1983) (internal quotations and citations omitted).

Some courts have, however, acknowledged the potential conflict of interest that may arise when the corporation, on whose behalf the suit has been filed, and the individual defendants are represented by the same counsel. See, e.g., Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1316 (3d Cir. 1993); Lewis v. Shaffer Stores Co., 218 F. Supp. 238 (S.D.N.Y. 1963). In Bell Atlantic, the Third Circuit held that, frivolous cases aside, when a derivative action alleges breaches of the duty of loyalty--including allegations of directors' fraud, intentional misconduct, or self-dealing--a conflict of interest arises, and

30

the corporation should be represented by separate counsel. 2 F.3d at 1317.

We need not decide here whether Curtain was improperly aligned or required separate representation, as we conclude that the district court correctly identified a conflict of interest between CYSA and Curtain and granted summary judgment on that basis. Not only did OSS allege that Sadeghian had breached his fiduciary duty to Curtain and usurped Curtain's business opportunities, but the Sadeghian Parties' responses to the allegations asked the district court to invalidate Curtain's intellectual property and contractual rights. See J.A. 806. This created an actual conflict of interest between Curtain's interests and the Sadeghian Parties' interest in prevailing in the lawsuit. See Jennings v. Kay Jennings Family Ltd. P'ship, 659 S.E.2d 283, 289-90 (Va. 2008).

The district court also correctly held that Fed. R. Civ. P. 23.1 barred CYSA's derivative counterclaims in light of the conflict of interest. Rule 23.1 states that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." In Davis v. Comed, Inc., 619 F.2d 588 (6th Cir. 1980), the Sixth Circuit listed several factors that weigh against a plaintiff satisfying

31

the fair and adequate representation test, including "economic antagonisms between representative and class," "indications that the named plaintiff was not the driving force behind the litigation," "other litigation pending between the plaintiff and defendants," and "plaintiff's vindictiveness toward the defendants." Id. at 593-94; see also Jennings, 659 S.E.2d at 288 (applying Davis factors to determine fair and adequate representation under Virginia law).

In this case, the Sadeghian Parties' defenses to the derivative complaint sought to invalidate Curtain's trademark and contract rights, creating an economic antagonism between CYSA and Curtain. Moreover, although CYSA filed the derivative counterclaims as a member of Curtain, the interests represented were likely to be that of its sole owner, Sadeghian, who was named in the original suit as an officer of Curtain. Finally, given the pending litigation between the parties--i.e., the derivative suit between OSS and the Sadeghian Parties--it was reasonable for the district court to conclude that the derivative counterclaims were likely filed as a vindictive response.

In sum, because of the conflict of interest between Curtain and CYSA, as well as CYSA's failure to pass the "fair and adequate representation" test, the district court correctly

32

granted summary judgment to OSS and Christ on the derivative counterclaims.[9]

## C.

The Sadeghian Parties also contend that the district court erred in <u>sua sponte</u> dismissing their direct counterclaims, or, in the alternative, that the district court should have dismissed these claims without prejudice. They note that OSS and Christ did not move for summary judgment on the claims, and the district court said nothing substantive about them in either its final order or its memorandum opinion. OSS and Christ respond that the district court properly granted summary judgment on the claims after finding that CYSA had a conflict of interest in representing Curtain.

The district court's finding that CYSA had a conflict of interest prevented CYSA from representing Curtain in a derivative suit. That finding has no bearing, however, on the Sadeghian Parties' right to file direct claims against OSS and Christ. And although the district court has the power to dismiss claims <u>sua sponte</u>, it gave no reason for taking such

---

[9] Because we find support for the district court's holding in Rule 23.1, we need not reach OSS and Christ's arguments that the derivative counterclaims were also flawed as a matter of Virginia state law. Nor need we consider whether the district court abused its discretion in granting the motion for summary judgment after previously denying a motion to dismiss on the same grounds.

action here, nor did it give notice to the Sadeghian Parties of its intention to do so. See Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 558 (6th Cir. 2012) (requiring that a party be given notice before the court dismisses the party's claims on its own motion).

It may be that the district court assumed all of the claims to be derivative, particularly because the scattershot pleading does little to make the relevant distinction. Some of the claims are clearly derivative, see Count VIII (alleging conversion/embezzlement of Curtain's funds), XI (alleging breach of fiduciary duty), XIV (alleging breach of the COA and CDA), XV (seeking a declaratory judgment as to Curtain's rights to its ongoing business), and XVI (alleging tortious interference with the COA, CDA, and various dealer agreements). On the other hand, certain claims could only have been brought directly, such as Counts I and II, alleging copyright infringement and cybersquatting as to ussmokeandfirecurtain.com, because CYSA, rather than Curtain, owned the website. Rather than parse the claims ourselves, we will vacate the district court's dismissal of the counterclaims and remand for the court to determine (1) on which side of the ledger (direct or derivative) each claim falls; and (2) if direct, whether the claims may nonetheless be disposed of at summary judgment.

34

Finally, the Sadeghian Parties argue that the district court erred in granting OSS and Christ summary judgment on their counterclaim seeking judicial dissolution, and that the court should have instead granted summary judgment to CYSA. In support of their motion for summary judgment on the claim, OSS and Christ argued that an application for judicial dissolution should be filed in state, rather than federal, court. In addition, OSS and Christ noted that the COA prevented judicial dissolution absent unanimous written agreement of all parties.

The Sadeghian Parties respond that although unanimous consent is required for dissolution of Curtain under the COA, no such agreement is necessary for judicial dissolution. See Va. Code § 13.1-1047 (providing that a claim for judicial dissolution of a limited liability company may be brought by any of its members). They also contend that the judicial dissolution claim is properly in federal court because the district court had supplemental jurisdiction over the claim, and principles of judicial economy support adjudicating all of the claims together.

The district court gave no explanation for why it chose to grant summary judgment to the OSS and Christ on this claim. Although we may "affirm on any legal ground supported by the record," Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir. 1993),

35

we generally do so only when remand "would be an unnecessary waste of judicial and litigant resources," O'Reilly v. Bd. of Appeals of Montgomery Cnty., 942 F.2d 281, 284 (4th Cir. 1991). Because we have already determined that remand is appropriate, few, if any, resources would be saved by de novo consideration of the propriety of judicial dissolution, a question we think best left to the district court in the first instance. See Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 363–64 (4th Cir. 1985) (refusing to independently determine whether summary judgment may be affirmed in a case "involv[ing] a complex array of subsidiary claims" when remand would "promote an informed decision, better frame the contentions of the parties, and ensure a proper record for review"), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 288 (1989). Therefore, we vacate the district court's grant of summary judgment on the judicial dissolution counterclaim and remand it for further proceedings.

V.

In sum, we vacate and remand the district court's dismissal of OSS's breach of fiduciary duty claims (counts four through eleven of the derivative complaint) and intellectual property claims regarding the "Elevator Shield" trademark (counts two and three of the derivative complaint). We also vacate and remand

36

the district court's dismissal of the Sadeghian Parties' counterclaims against OSS and Christ, as well as their separate request for judicial dissolution of Curtain. We affirm the district court's dismissal of all other claims.

<u>AFFIRMED IN PART,</u>
<u>VACATED IN PART,</u>
<u>AND REMANDED</u>